## Case No. 1,579.

### BLUNT v. PATTEN.

[2 Paine, 393.] [1]

Circuit Court, S. D. New York. June Term, 1828.

COPYRIGHT—INFRINGEMENT—CHART—USE OF SURVEY—QUI TAM ACTION—QUESTION FOR JURY.

[1. The unauthorized use by a map-maker of the surveys upon which a copyrighted map is based is an infringement of the copyright.]

[2. In a qui tam action for infringement of the copyright of a chart, the question whether defendant copied from plaintiff's survey is for the jury.]

[At law. Qui tam action by Edmund M. Blunt against Richard Patten to recover the penalty for an infringement of copyright. Verdict for plaintiff. For bill in equity to restrain infringement, see Case No. 1,580.]

D. B. Ogden and J. Blunt, for plaintiff. J. Anthon, for defendant.

This action was brought for a breach of copyright. It appeared in evidence that the plaintiff, in 1821, caused a survey to be made of the South shoal of Nantucket; and that it was then ascertained that the said shoal had been laid down in all the charts previously in use, twenty miles too far to the southward, it being in latitude forty-one degrees four minutes, instead of forty degrees forty-four minutes, as in the old charts.

It was also proved, that the same year the plaintiff projected a survey of George's shoal, and sent a vessel with competent surveyors for that purpose to Boston, to join a vessel which Capt. Hull, the United States naval commander on that station, permitted to assist in said survey; that the said survey was made chiefly at the expense of the plain-

tiff; and that it was expressly understood by Capt. Hull that it was for the private benefit of the plaintiff. The results of the survey were placed on a chart drawn by Mr. Edmund Blunt, and copies of the same given to an officer of the United States, to be transmitted to the navy department for the use of government, and to preserve the information among the public archives.

The plaintiff published these surveys on his chart of the northeastern coast of the United States in October, 1821, and the copyright was duly secured.

In May, 1827, the defendant published his chart of the northeastern coast, with these shoals substantially copied, in form, position and bearings, from the chart of the plaintiff.

The plaintiff then rested; and the defendant, in his defence, showed that he had obtained a copy of the chart lodged in the navy department, by permission of one of the navy commissioners; and that by being placed there, it became a public document, which he had a right to copy. He also attempted to show that he had obtained the true position of the South shoal of Nantucket, from a survey taken by a British officer in 1805. It did not appear, however, that that survey had ever been published, or that any person except the witness produced by the defendant, had ever heard of it. He produced the draughtsman and engraver of his chart; but on cross-examination, it appeared that the former was directed to omit in draught, Nantucket shoals; and that the engraver copied it from a separate piece of paper, furnished by the defendant, and drawn by some person unknown. The defendant also proved, that the soundings near Nantucket shoal on his chart, were different from those of the plaintiff's, being taken from Desbarres' survey, published in 1776. The defendant's counsel contended that there could be no copyright in the location of a shoal—that it was a thing that by nature could only be placed in one position, and that it was obviously here taken from other authorities than from the plaintiff's chart; he also contended that the chart in the navy department was a public document, and open to all the world, and that the plaintiff had no right to make a monopoly of either that, or the true position of Nantucket South shoal.

Many respectable ship-masters were produced, who testified that they always regarded the discovery of the error in the position of Nantucket South shoal, as having been made entirely by the plaintiff, whom the mariners of the United States had been greatly indebted to for most of the information now obtained concerning their own coast; and had been relied upon as the publisher of the charts and nautical works now in use. They also testified that the survey of Nantucket and George's shoals were highly important, and that they appeared to be substantially copied on the defendant's chart

---

[1] [Reported by Elijah Paine, Jr., Esq.]

from the plaintiff's. After the testimony had been commented on by the counsel for the parties,

THOMPSON, Circuit Justice, charged the jury that the privilege of an author to the exclusive sale of his works for a limited term of years, although a monopoly, was not so in the odious meaning of the term; it was but a proper reward for his labor provided by law, and to which he was as much entitled as to the exclusive enjoyment of any other kind of property: that the plaintiff could not, it was true, obtain a copyright in the shoal itself, nor in the original elements of his charts; but that he had a right to the results of his labors and surveys. The defendant might resort to the original materials of the chart, and survey for himself; but he could not avail himself, either in whole or in part, of the surveys of the plaintiff. The law was intended to secure to authors the fruits of their skill, labor and genius, for a limited time; and if in this instance the defendant had availed himself of the surveys of the plaintiff in compiling his chart, the plaintiff was entitled to a verdict.

In the case of Nantucket shoal, the defendant produced a witness, who stated that he had communicated to the defendant its true position; and it was a question for the jury to decide whether the defendant had copied from the plaintiff's survey or not: as to George's shoal, no doubt it was copied from his survey, and the pretence that it became a public document from being deposited in the public office, was entirely untenable. The survey was made chiefly at the plaintiff's expense, and, according to the understanding, it was to be for his benefit; it was of great use to the navigating community, and Capt. Hull was justified in aiding him in it upon such terms.

The jury retired, and in less than five minutes brought in a verdict for the plaintiff.