## Case No. 1,580.

### BLUNT v. PATTEN.

[2 Paine, 397.] [1]

Circuit Court, S. D. New York. June 19, 1828.

COPYRIGHT—WHAT SUBJECT TO—INFRINGEMENT—QUESTION FOR JURY—INJUNCTION — ACTION AT LAW.

1. The natural objects from which a chart is made, being open to the examination of all, a copyright cannot subsist in a chart as a general subject.

[Cited in Johnson v. Donaldson, 3 Fed. 25; Chapman v. Ferry, 18 Fed. 541.]

2. A right in such a subject is violated only when another copies from the chart of him who has secured the copyright, and thereby avails himself of his labor and skill.

3. In all such cases, it is a proper question for a jury whether the one is a copy of the other or not. And if there is some small variance,

[1] [Reported by Elijah Paine, Jr., Esq.]

it would be a proper subject of inquiry whether the alteration were not merely colorable.

[Cited in Johnson v. Donaldson, 3 Fed. 25; Chapman v. Ferry, 18 Fed. 541.]

4. If it is doubtful whether or not there has been an infringement, an injunction will not be granted in the first instance; but a trial at law will be directed.

[In equity. Bill by Edmund M. Blunt against Richard Patten for infringement of copyright. Application for injunction denied pending the outcome of complainant's action at law. Upon verdict being given for plaintiff therein (Case No. 1,579), an injunction is awarded.]

This was a bill filed to obtain an injunction to restrain the defendant from printing, publishing and vending the charts mentioned and described in the action brought in the same case for breach of copyright. 2 Paine, 393 [Blunt v. Patten, Case No. 1,579].

THOMPSON, Circuit Justice. The complainant, by his bill, asks an injunction to restrain the defendant from the further printing, publishing and selling a chart purporting to be a chart of the north-eastern coast of North America, so far as the same relates to the South shoal of Nantucket, and the soundings adjacent thereto; and also to George's bank and the soundings adjacent thereto; and between the said bank and Cape Ann, and Nantucket shoals, alleging that the said chart published by the defendant, and the surveys and soundings copied thereon, were copied and taken from surveys and soundings made by the complainant, and published by him in a chart, the copyright of which had been duly taken out and secured according to the laws of the United States on the 2d of October, 1821.

The complainant alleges that his copyright has been infringed in two particulars: first, as it relates to the position of the South shoal of Nantucket; and secondly, as to George's bank. With respect to the former, he states that on all the old charts published prior to his, this shoal is laid down in latitude forty degrees forty-four minutes. That from surveys made by his direction in the year 1821, it was ascertained that this was about twenty-two miles too far south, which error he corrected, and laid down the shoal in his chart in latitude forty degrees four minutes, according to its true position.

And with respect to George's bank, he alleges that it was imperfectly known and described in the charts published prior to the year 1821, when he, at his own expense, caused a survey to be made, and a competent knowledge of the shoal for the first time obtained and published on his chart. And charges the defendant with having availed himself of the information thus acquired by the labor, and at the expense of the complainant in the publication of his chart.

The defendant has not put in his answer, but by his affidavit read in opposition to the motion, he denies, that in compiling his chart

of the eastern coast of America, he has in any respect availed himself of the complainant's chart. That he never did until June last look at the soundings on his chart, or compare them in detail with those on his own; and that on making the comparison, he found that the soundings on his chart in nowise compared with those on the complainant's. That they are not in the same latitude or longitude, nor do the depths of water correspond when they approach the nearest position on the different charts. That the latitude and longitude of Nantucket South shoal is laid down from information received from White Matlock, as detailed in his deposition. And that the shoal grounds of George's bank, with the soundings adjacent, are copied from a public document on file in the office of the navy commissioners at Washington, after being reduced to the scale of his chart.

By the deposition of White Matlock, it appears that in May, 1823, he communicated to the defendant the information, that there was an error in the old charts as to the situation of the Nantucket South shoal, and gave him a memorandum thereof, which is annexed to his deposition; and he swears that he received the information from Captain John Naimes, of the British navy, in the year 1805, who at that time gave him a manuscript chart of Nantucket shoals, George's shoals and —— island, which chart has since been destroyed by fire; that Captain Naimes was flag-lieutenant of the Isis, and superintended the survey; and that the Nantucket South shoal is correctly laid down in defendant's chart, according to such information. That from the time he received that information from Captain Naimes, he has been in the habit of passing said shoal as in latitude of forty-one degrees four minutes, instead of forty degrees forty-four minutes, as laid down in the old charts.

With respect to the document on file in the office of the navy commissioners, from which the defendant copied into his chart the shoal grounds of George's bank, with the adjacent soundings, the complainant denies that it was a public document, but alleges that it was delivered to Cheever Felch to be deposited in the navy department, upon the condition and express understanding that it was not to be published except by the complainant; and in support of this allegation the deposition of Edmund Blunt has been read, stating such to have been the understanding with Felch, and that although Captain Hull sent the schooner Science, a public vessel, to aid in the survey, yet it was expressly understood between him and the complainant that the survey was to be made for the exclusive benefit and profit of the complainant, and that the soundings were taken solely by the persons employed by him, and that none were taken by Felch.

Thus stand the leading facts in the case as they now appear before me; and what may ultimately be found to be the real rights of the complainant, is a question not entirely free from doubt; and the circumstances disclosed present a case which appears to me to call for a more full and satisfactory explanation, and requiring a trial of the right at law, before an injunction ought to be granted. If, as seems to be admitted on all sides, there has been an error in the old charts in laying down the position of Nantucket South shoal, and the complainant has, by devoting his time and expending his money, discovered that error and corrected it in his chart, it is of great public utility, and he ought to be protected in the enjoyment of the profits of his enterprise. That he has been at considerable expense in making surveys to ascertain the situation of this shoal, cannot be denied; and it is very probable he was entirely ignorant of the error in the old charts having been discovered by any other person; yet, if such be the fact, and the defendant, in making his chart, has had recourse to such other discovery, and has not availed himself of the defendant's labor and skill, the plaintiff has no right to complain. A copyright cannot subsist in a chart, as a general subject, although it may in the individual work, and others may be restrained from copying such work.[2] But the natural objects from which the charts are made are open to the examination of all, and any one has a right to survey and make a chart. And if such surveys and charts are all correct, all will be alike, but no one would complain of his rights having been infringed, and each

---

[2] In the case of Sayre v. Moore, 1 East, 361, the court instructed the jury, that if they found that the defendant, although he used the plaintiff's chart, had been correcting errors, and not servilely copying, they should find a verdict for the defendant; but that if it was a mere servile imitation, they should find for the plaintiff. "The charts which had been copied were four in number, which Moore had made into one large map. It appeared in evidence that the defendant had taken the body of his publication from the work of the plaintiffs, but that he had made many alterations and improvements thereupon. It was also proved that the plaintiffs had originally been at a great expense in procuring materials for these maps. Delarochett, an eminent geographer and engraver, had been employed by the plaintiffs in the engraving of them. He said that the present charts of the plaintiffs were such an improvement on those before in use, as made an original work. Besides, their having been laid down from all the charts and maps extant, they were improved by many manuscript journals and printed books, and manuscript relations of travellers; he had no doubt the materials must have cost the plaintiffs between £3,000 and £4,000, and that the defendant's chart was taken from those of the plaintiffs, with a few alterations. In answer to a question from the court, whether the defendant had pirated from the drawings and papers, or from the engravings, he answered, from the engravings. Winterfelt, an engraver, said he was actually employed by the defendant to take a draft of the gulf passage (in the West Indies) from the plaintiffs' map. "Many witnesses were called on behalf of the defendant, amongst others, a Mr. Stephenson

one may be considered an original chart. A right, in such a subject, is violated only when another copies from the chart of him who has secured the copyright, and thereby availing himself of his labor and skill. And in all such cases it is a proper question for a jury, whether the one is a copy of the other or not. If the two are in all respects alike, the prima facie presumption probably would be, that one was a copy of the other, yet both might be originals; and if there was some small variance, it would be a proper subject of inquiry whether the alteration was not merely colorable, and that the one was in substance a mere transcript of the other.

All these are proper questions to be submitted to a jury to decide. Whether the one is or is not a servile imitation of the other, and not the fair fruit of original labor, upon a subject that is open to all the world. These are the general and well-settled rules by which cases of this description are to be tried and governed. 1 East, 361, and cases collected in note; 12 Ves. 269; 16 Ves. 268; 2 Mer. 436. And if applied to the facts disclosed by the affidavits which have been read, will show that this is a proper case for a trial at law, and not for an injunction, in its present stage, which is granted only to prevent the use of that which is the exclusive property of another, and proceeds on the ground that the title to the property is in the plaintiff.

The defendant swears, that in compiling his chart of the Nantucket shoal, he has not taken one figure from the plaintiff's chart, and that the two, in no respect, agree in the soundings laid down; and that the latitude and longitude of the shoal is laid down from the information received from Capt. Matlock, who swears that he obtained it, as early as the year 1805, from a captain of the British navy, who furnished him with a manuscript chart in which this shoal is laid down as in latitude 41 deg. 4 min., according to defendant's chart.

The defendant, in making his chart, had a right to avail himself of all prior publications, the copyright of which was not secured; and if he has compiled his chart from such other publications, it is no infringement of the plaintiff's right, although it may agree with his chart.

With respect to the chart, so far as it relates to George's bank, the circumstances are a little extraordinary, and require explanation, before an injunction is granted on this alleged infringement of the plaintiff's right. It is very satisfactorily shown, that the defendant's chart is taken from one on file in the navy commissioners' office in Washington, a copy of which was furnished to the defendant, and which, upon its face, purports to be "A Chart of George's Shoals, from surveys made in the United States schooner Science and sloop Orbit, by direction of the Board of Navy Commissioners, and under the orders of Capt. Isaac Hull. By Cheever Felch, 1821." And yet Edmund Blunt swears, that it was expressly understood between the plaintiff and Capt. Hull, and so stated by the latter to the deponent, that while the government should have the

and Admiral Campbell. Mr. Stephenson said he had carefully examined the two publications; that there were very important differences between them, much in favor of the defendant's; that the plaintiffs' maps were founded upon no principle; neither upon the principle of the Mercator, nor the plain chart, but upon a corruption of both; that near the equator the plain chart would do very well, but that as you go further from the equator, you must have recourse to the Mercator; that there were very material errors in the plaintiffs' maps; that they were in many places defective in pointing out the latitude and longitude, which is extremely essential in navigating; that most of these, as well as errors in the soundings, were corrected by the defendant. Admiral Campbell observed, that there were only two kinds of charts, one called a plain chart, which was now very little used; the other, which is the best, called the Mercator, and which is very accurate in the degrees of latitude and longitude; that this distinction was very necessary in the latitudes, but in places near the equator it made little or no difference; that the plaintiffs' maps were upon no principle recognized among seamen, and no rules of navigation could be applied to them; and they were therefore entirely useless.

"Lord Mansfield, C. J. The rule of decision in this case is a matter of great consequence to the country. In deciding it, we must take care to guard against two extremes, equally prejudicial; the one, that men of ability, who have employed their time for the service of the community, may not be deprived of their just merits, and the reward of their ingenuity and labor; the other, that the world may not be deprived of improvements, nor the progress of the arts be retarded. The act that secures copyright to authors, guards against the piracy of the words and sentiments; but it does not prohibit writing on the same subject. As in the case of histories and dictionaries. In the first, a man may give a relation of the same facts, and in the same order of time; in the latter an interpretation is given of the identical same words. In all these cases the question of fact to come before a jury is, whether the alteration be colorable or not? There must be such a similitude as to make it probable and reasonable to suppose that one is a transcript of the other, and nothing more than a transcript. So in the case of prints, no doubt different men may take engravings from the same picture. The same principle holds with regard to charts. Whoever has it in his intention to publish a chart, may take advantage of all prior publications. There is no monopoly of the subject here, any more than in the other instances; but upon any question of this nature, the jury will decide whether it be a servile imitation or not. If an erroneous chart be made, God forbid it should not be corrected even in a small degree, if it thereby becomes more serviceable and useful for the purposes to which it is applied. But here you are told, that there are various and very material alterations. This chart of the plaintiffs' is upon a wrong principle, inapplicable to navigation. The defendant, therefore, has been correcting errors, and not servilely copying. If you think so, you will find for the defendant; if you think it is a mere servile imitation, and printed from the other, you will find for the plaintiffs."—Verdict for defendant.

credit of aiding to make the survey, it should be for the exclusive benefit and profit of the plaintiff; and that a copy of the chart was delivered to Cheever Felch as an officer of the government, to be deposited in the navy department, upon the condition and express understanding that it was not to be published but by the plaintiff, for whose benefit and at whose instance the survey was made.

I forbear, at present, making any remarks upon the incongruity between this affidavit and what the chart in the navy commissioners' office would, upon its face, seem to import; and also upon the implied imputation against the commissioners, for having permitted a copy to be taken of a document deposited in their office, under an agreement that it was not to be published. All this may be susceptible of satisfactory explanation. It is at present, however, involved in too much obscurity for me to safely act on this part of the case, and I shall leave the explanation to be given on a trial at law.

The application for an injunction is, accordingly, denied.

After the trial of the action at law in this case,—2 Paine, 393 [Blunt v. Patten, Case No. 1,579],—the following decree was entered:

Present: The Honorable SMITH THOMPSON, one of the associate justices of the supreme court of the United States; the Honorable SAMUEL R. BETTS, judge of the district court. The court was opened by proclamation.

Whereas, heretofore—that is to say, on the twenty-eighth day of June, in the year of our Lord one thousand eight hundred and twenty-seven—Edmund M. Blunt, a native born citizen of the United States, and an inhabitant of the state of New York, exhibited his bill of complaint in this honorable court against Richard Patten, defendant, thereby setting forth that the said Richard Patten, in violation of a copyright of the said Edmund M. Blunt, to a certain chart entitled "Blunt's New Chart of the North-Eastern Coast of North America," extending from latitude 37 deg. 20 min. north, longitude 75 deg. 20 min. west, to latitude 47 deg. 55 min. north, longitude 65 deg. 5 min. west, a printed copy of which said title was deposited in the office of the clerk of the district court of the southern district of New York, before the publication of said chart, to wit: on the second day of October, in the year one thousand eight hundred and twenty-one, had prepared and published a certain chart, purporting to be a "New Chart of the North-Eastern Coast of North America, Nova Scotia, &c., from the best authorities," on which said chart certain surveys taken by the said Edmund, and at his expense, and inserted on his said chart of the South shoal of Nantucket and George's bank, with the soundings thereon and adjacent thereto, and also the soundings between Cape Ann and George's bank, and thence to Nantucket shoal, had been copied, contrary to the will of said Edmund, and in violation of his rights; and further setting forth, that the actings and doings of the said Richard were contrary to equity and good conscience, and requiring relief in the premises. And the said complainant further prayeth the honorable court, that the usual process of subpoena might be thereat awarded against the said defendant, to compel him to appear and answer the said bill, which, being granted, and the said defendant duly served therewith, he appeared and answered accordingly.

And whereas the said defendant, by his answer, admitted the publication of twenty-five copies of the said chart, entitled "A New Chart of the North Eastern Coast of North America, Nova Scotia, &c., from the best authorities," but denied that the said chart, or any portion thereof, was copied from the chart of the said Edmund above mentioned. The said defendant further asserted, that the same latitude and longitude of Nantucket South shoal was laid down by him on the said chart, from information received from one Captain Matlock, on the twenty-second day of May, one thousand eight hundred and twenty-three, from a survey made by one Capt. John Naimes, of the British navy, in the year one thousand eight hundred and five; and that the said shoal, called George's bank, on the said chart, was copied from a manuscript furnished by his agent, Arthur I. Stansbury, who copied the same from a public chart, in manuscript, on file in the navy commissioners' office, and there remaining, as he understood, as a public document for the public benefit, entitled "A Chart of George's Shoals, from surveys made in the United States schooner Science and sloop Orbit, by direction of the Board of Navy Commissioners, and under the order of Capt. Isaac Hull, by Cheever Felch, 1821." And the said defendant further denied all unlawful combination and confederacy, and concluded his answer with a general traverse as by the said bill and answer remaining as of record in the honorable court may now fully appear.

And whereas, afterwards, to wit, on the fourth day of June, in the year of our Lord one thousand eight hundred and twenty-eight, the said Edmund M. Blunt did exhibit his supplemental bill in this honorable court, against the said Richard Patten, therein setting forth, that upon the bill and answer thereinbefore mentioned, a notice for an injunction, restraining the said Richard Patten from publishing his said chart in violation of the copyright of the said Edmund M. Blunt, and for further relief, according to the prayer of said bill, was made to this honorable court; and that the same was denied, on the ground that as there was cross affidavits and conflicting testimony in this case as appeared to the court to be one, required a trial of the right at law, before an injunction ought to be granted.

And further setting forth, that a suit at law was instituted by the said Edmund M. Blunt against the said Richard Patten, for a violation of the copyright of the said Edmund as aforesaid, which said suit on the twenty-seventh day of May, in the year one thousand eight hundred and twenty-eight, was tried before the judges of the circuit court of the United States for the southern district of New York; and upon trial thereof, witnesses were produced and examined, both on behalf of the said Edmund M. Blunt and the said Richard Patten, for the purpose of determining whether the said surveys of the South shoal of Nantucket and of George's bank had been copied or not on the said chart, published by the said Richard, from the said chart of the said Edmund, in violation of the act in such case made and provided; and the jury appointed for the trial of the same, then and there rendered a verdict for the said Edmund M. Blunt, the plaintiff, in the said suit; and the said Edmund M. Blunt, for this, prayed this honorable court, that a suit of injunction might be thereout awarded, restraining the said Richard Patten in printin, publishing and vending the said charts so published by him as aforesaid, or so much thereof as concerned and related to the South shoal of Nantucket, its position, bearings, form and location, and also of George's bank, its position, bearings, form and location, and the soundings between the said bank and Cape Ann, and Nantucket Shoal, without the consent of the said Edmund M. Blunt, first obtained in writing, or until the exclusive privilege of the said Edmund M. Blunt should expire, or until the further order of the said court to the contrary. And the said Edmund M. Blunt further prayed the honorable court, that the said Richard Patten deliver unto the said Edmund all and every copy or copies of such chart, and also all and every sheet and sheets, being part of the said chart, in the possession of the said Richard; and also the costs and charges being fully sustained by the said Edmund in his behalf. And the said cause, being thus ready for a hearing on the bill, answer, and supplemental bill, a day was appointed by the court for the hearing thereof; on which day, being the fifth day of June, in the year of our Lord one thousand eight hundred and twenty-eight, the said cause came on to be heard before the honorable court; whereupon this honorable court did order and decree, that an injunction issue forthwith against the said Richard, restraining him from publishing his said chart as aforesaid; that the said Richard Patten deliver to the said Edmund M. Blunt all and every copy and copies of such chart, so published by him as aforesaid; and also all and every sheet and sheets, being part of the same now in possession of the said Richard Patten, for the purpose of being forthwith destroyed; and, also, that he pay to the said Edmund M. Blunt the cost and charges wrongfully sustained by him, the said Edmund, in the behalf, to be taxed by the clerk of the honorable court.

Fred. J. Betts, Clerk.