# BLEISTEIN *v.* DONALDSON LITHOGRAPHING COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 117. Argued —Decided February 2, 1903.

Chromolithographs representing actual groups of persons and things, which have been designed from hints or descriptions of the scenes represented, and which are to be used as advertisements for a circus are "pictorial illustrations" within the meaning of Rev. Stat. § 4952, allowing a copyright to the "author, designer, or proprietor . . . of any engraving, cut, print, . . . or chromo" as affected by the act of 1874, chap. 301, § 3, 18 Stat. 78, 79. And on complying with all the statutory requirements the proprietors are entitled to the protection of the copyright laws.

The case is stated in the opinion of the court.

*Mr. Ansley Wilcox* and *Mr. Arthur von Briesen* for plaintiffs in error:

This action comes here upon writ of error to the Circuit Court

of Appeals for the Sixth Circuit, which court heard it on writ of error directed to the United States Circuit Court for the District of Kentucky. The Circuit Court, at the close of plaintiffs' case, instructed the jury to find a verdict for defendant, which was done and judgment entered thereon. The Circuit Court of Appeals affirmed said judgment.

There were three causes of action which were all based upon sec. 4965 of the Revised Statutes, quoted on page 60. By order of the Circuit Court, dated June 10, 1899, the marshal seized 10,590 eight-page prints and 13,205 four-page prints, described in the writ, and also five metal electrotype plates, all of which he found in the defendant's possession (page 13).

The action was tried at Covington, Kentucky, on December 12 and 13, 1899, before Hon. Walter Evans, sitting as Circuit Judge, and a jury.

At the outset of the trial, during the direct examination of the first witness, the court anticipated the question upon which it afterwards took the case away from the jury and decided it, by the following remark : " *The real controversy will be whether this is a subject of copyright, whether it comes within the copyright law.*"

At the close of the plaintiffs' case, defendant moved for " peremptory instructions for the defendant." The court said, " State why, in a word," to which defendant's counsel answered : " In the first place I want to say with reference to the Statuary Exhibit. . . . It is alleged in the petition, and is in fact copyrighted on the 18th of April, and the publication plainly shows it was prior to that. That is a specific objection to that one upon that ground specifically—that is the Statuary.

" The Court : Now as to the other two.

" Counsel : The specific objection to this one, the Ballet, is that it is an immoral picture.

" And the general objection that I make to them all is that they are none of them subject matter of copyright. They are all mere matter of advertising."

The next day the court delivered a written opinion which concludes as follows :

" The case must turn upon the others (other questions), and

especially upon the general proposition that the things copyrighted in this case were by no means such as either the Constitution or the legislation of Congress intended to protect by the privilege of copyright. The court cannot bring its mind to yield to the conclusion that such tawdry pictures as these were ever meant to be given the enormous protection of not only the exclusive right to print them, but the additional protection of a penalty of a dollar each for reprints from them.

" As previously stated, they are neither ' pictorial illustrations' nor ' works connected with the fine arts,' within the meaning of section 4952. Not being so, there was no authority to grant the copyrights, whether the Constitution authorizes Congress to promote the fine arts or not.

" The judgment of the court is, that the plaintiffs, on their own showing, are not entitled to recover, and for that reason the motion of defendant will be granted, and I will instruct the jury to find a verdict for it."

The jury, in accordance with said instruction, returned a verdict for the defendant.

There is no question as to the fact of infringement.

The sheets in evidence, made by defendant, contain reproductions by means of cheap electrotype plates of each of the plaintiffs' designs. These reproductions are not in colors.

The principal questions are :

First. Whether on the question of artistic merit or value of these lithographic prints or chromos, the Circuit Court was justified in taking the case from the jury, and condemning them entirely as not being fit subjects for copyright.

Second. Whether the copyrights were obtained for these prints in accordance with the Constitution and laws of the United States, and are valid copyrights.

The second question involves the inquiries : Whether the copyrights were properly taken out by the plaintiffs, in their trade names of " The Courier Co." and " The Courier Lithographing Co.," and, incidentally, whether plaintiffs have the right to sue in their individual names for infringement of these copyrights ; and whether the Statuary Act Design was copyrighted before it was published.

The three pictures in question are show-bills or circus bills, also called posters and, more definitely, picture-posters. They are colored lithographs or chromolithographs, commonly called " chromos." They were designed primarily to be sold to the proprietors of circuses and other shows, and by them to be used for advertising ; but they could be sold to any one, or used for any purpose for which they were adapted.

They were made in the plaintiffs' lithographing establishment under a special contract with the proprietor of a circus, by which the plaintiffs agreed to design and get up certain representations of scenes supposed to be exhibited at the show, the plaintiffs reserving rights of design and of copyright, and with the usual understanding that so long as the proprietor of the circus used these designs he had the right to them, but if he ceased to use any of them, the plaintiffs could sell the design or the pictures which embodied it, to any one.

The fundamental question of the right to copyright such show-bills or posters, is a question of great importance, involving the protection of an immense industry. The foundation of the copyright law is in the provision of the Constitution (art. 1, sec. 8), which authorizes Congress—

" To promote the progress of science and *useful arts,* by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries."

It is settled that the words " authors " and " writings," in this section, are not confined to literary writers and their works, but include, among others, designers, engravers and lithographers, as well as photographers. *Burrow-Giles Litho. Co.* v. *Sarony,* 111 U. S. 53 ; *Trade Mark Cases,* 100 U. S. 82. Picture-posters or show bills, such as these chromolithographs were, are not designed for close inspection or long-continued study, like an oil painting, a steel or wood engraving, or an etching, and they are not to be judged by the same standards. They are intended to catch the eye of the passer on the street, or any one who merely glances at them, and to challenge his attention,—if possible to compel him to look again, so that he will observe what is the subject of the poster and have this forced upon his mind, and will be attracted by it. Their func-

tion is to illustrate something, and to advertise it by appealing quickly to the imagination, and conveying instantly a strong and favorable impression. Thus, to be successful, they require artistic ability, and above all things creativeness or originality of a high order, but peculiar. They must be designed boldly, and executed on broad lines, with not much attention to detail, so that the spirit of the picture will stand out at once, and almost leap at you, and will not be lost in a mass of details and minor features.

Such is the ideal picture-poster, a special and peculiar branch of pictorial art, and one into which many gifted artists, highly successful in other fields, have ventured with greater or less success. Charles Hiatt's work entitled "Picture Posters," published in 1895 by George Bell & Sons, London; "The Modern Poster," by Alexandre and others, published in 1895 by Charles Scribner's Sons.

Certainly it does not lie in the mouth of the pirate, who has stolen and copied them at some expense and considerable risk, to deny that they have merit and value.

I. The designs were proper subjects of copyright and each of these picture-posters was a proper subject of copyright, within the language and the spirit of the copyright law. There was abundant evidence of originality of design, of artistic merit, and of practical value and usefulness, as to each of the pictures.

If any of these qualities was seriously questioned by the defence, it became the duty of the court to send the case to the jury.

All of the pictures are new and original designs and involve new and original conceptions and creations. There was enough evidence on this subject to require the case to be submitted to the jury if any question was raised about it, citing, and in some instances distinguishing, as to definition of author, writings, etc., *The Trade Mark Cases,* 100 U. S. 82; *Lithograph Co.* v. *Sarony,* 111 U. S. 53; *Nottage* v. *Jackson,* 11 Q. B. Div. 627; *Brightly* v. *Littleton,* 37 Fed. Rep. 103; *Carlisle* v. *Colusa County,* 57 Fed. Rep. 979; *Drury* v. *Ewing,* Fed. Cases, No. 4095.

If any one of the pictures was sufficiently proved to be new

and original, this was enough to carry the case to the jury upon this question; they were all proved to be new and original.

II. As to artistic merit and value. The pictures being original designs, we maintain that they are of sufficient artistic merit and of sufficient value and usefulness to be entitled to copyright. At least there was enough evidence of this to require the case to be submitted to the jury, if any question was raised about it,—and furthermore no such question was raised by the defence.

"If a copyrighted article has merit and value enough to be the object of piracy, it should also be of sufficient importance to be entitled to protection." Drone on Copyright, p. 212, cited with approval in *Henderson* v. *Tomkins*, 60 Fed. Rep. 758, 765; *Church* v. *Linton*, 25 Ont. Rep. 121; *Hegeman* v. *Springer*, 110 Fed. Rep. 374; *Bolles* v. *Outing Co.*, 77 Fed. Rep. 966; 175 U. S. 262; *Richardson* v. *Miller*, Fed. Cases, No. 11,791.

We have nothing to do with cases involving attempts to copyright *mere catalogues or price lists*, or labels, sometimes containing pictures, reproduced by photographic or other mechanical processes, of articles intended for sale, but which obviously have no artistic merit or originality. These decisions, whether condemning or upholding such copyrights, do not touch the questions involved in the case at bar. Distinguishing *Mott Iron Works* v. *Clow*, 82 Fed. Rep. 216; also citing *Yuengling* v. *Schile*, 12 Fed. Rep. 97, 101; *Schumaker* v. *Schwencke*, 25 Fed. Rep. 466; *Lamb* v. *Grand Rapids School Furniture Co.*, 39 Fed. Rep. 474; Drone on Copyright, 164, 165; *Grace* v. *Newman*, L. R. 19 Eq. Cases, 623; *Maple* v. *Junior Army & Navy Stores*, L. R. 21 Ch. Div. 369; *Church* v. *Linton*, 25 Ont. Rep. 131; *Carlisle* v. *Colusa County*, 57 Fed Rep. 979.

"The degree of merit of the copyrighted matter the law is not concerned with. Any is legally enough. To use it or not use it, is voluntary on the part of the public."

III. The copyrights were properly taken out by the plaintiffs in their trade names of "The Courier Co." and "The Courier Litho. Co.," and the plaintiffs have the right to sue in their individual names for infringement of these copyrights.

That copartners in business, who are the proprietors of a

copyrighted article, may take out a copyright in either of their copartnership or trade names, is well settled. *Scribner* v. *Clark,* 50 Fed. Rep. 473; affirmed as *Belford* v. *Scribner,* 144 U. S. 488; *Callaghan* v. *Myers,* 128 U. S. 617; *Scribner* v. *Allen Co.,* 49 Fed. Rep. 854; *Werckmeister* v. *Springer Lith. Co.,* 63 Fed. Rep. 808; *Rock* v. *Lazarus,* Law Rep. 15 Eq. Cases, 104; *Weldon* v. *Dicks,* Law Rep. 10 Ch. Div. 247; *Fruit-Cleaning Co.* v. *Fresno Home Packing Co.,* 94 Fed. Rep. 845.

Finally, the plaintiffs were the *"proprietors"* of each of the copyrighted prints, and as such were authorized to take out the copyrights by the express language of the copyright law, Rev. Stat., sec. 4952, which includes "proprietors" with "authors, inventors (and) designers." *Colliery Eng. Co.* v. *United etc., Co.,* 94 Fed. Rep. 152.

No formal assignment of the right to a copyright is necessary. *Consent* is sufficient to constitute one the proprietor. *Carte* v. *Evans,* 27 Fed. Rep. 861. See also *Schumacher* v. *Schwencke,* 25 Fed. Rep. 466; *Little* v. *Gould,* Fed. Cases, No. 8395; *Lawrence* v. *Dana,* Fed. Cases, No. 8136; *Sweet* v. *Benning,* 81 Eng. Com. Law Rep. 459; 16 Com. Bench Rep. 459; *Gill* v. *United States,* 160 U. S. 426, 435.

All of the pictures, and particularly the Statuary Act Design, were copyrighted before publication.

The law is well settled that there was no publication of these prints when they were shipped from Buffalo on April 11, or when they were received by Mr. Wallace at Peru, Indiana, on or about April 15. There was no publication until they were exposed to the general public, so that the public, without discrimination as to persons, might enjoy them. This must have been some time after April 15, when the last copyright was surely completed.

Publication is a legal conclusion which follows from certain acts. Drone on Copyright, p. 291; *Jewelers Merc. Agency* v. *Jewelers Pub. Co.,* 84 Hun (N. Y. Sup. Ct.), 12, 16; *Callaghan* v. *Myers,* 128 U. S. 617; *Black* v. *Henry G. Allen Co.,* 56 Fed. Rep. 764; *Belford* v. *Scribner,* 144 U. S. 488; *Garland* v. *Gemmill,* 14 Canada Sup. Ct. Rep. 321; *Prince Albert* v. *Strange,* 2 De Gex & Smale, 652; 1 MacNaghten & Gorden; 47 Eng. Ch.

Rep. 25. The representation of a play upon the stage regularly at a theatre, does not constitute a publication. *Tompkins* v. *Halleck*, 133 Massachusetts, 32 ; *Palmer* v. *De Witt*, 47 N. Y. 532; *Boucicault* v. *Hart*, Fed. Cases, No. 1692.

The use by a teacher of his manuscript and allowing pupils to make copies for the purpose of obtaining his instruction, does not amount to a publication. *Bartlett* v. *Crittenden*, Fed. Cases, Nos. 1076 and 1082. The printing of copies of an operetta and distributing them to artists, for private use only in learning their parts, and the representing of the operetta on the stage, is not a publication. *French* v. *Kreling*, 63 Fed. Rep. 621 ; *Reed* v. *Carusi*, Fed. Cases, No. 11,642; *Blume* v. *Spear*, 30 Fed. Rep. 629 ; *Exch. Tel. Co.* v. *Cent. News*, Law Rep. 2 Ch. Div. 48.

*Mr. Edmund W. Kittredge*, with whom *Mr. Joseph Wilby* was on the brief, for defendant in error, contended that the plaintiff in error was not entitled to copyright. The evidence established that these three prints were ordered by B. E. Wallace, proprietor of the circus known as the "Wallace Shows," under contract with him as an advertisement for his show, and they have never been made for anybody else. All of these pictures purported to be representations of acts to be done in the Wallace Shows, and all were made under a representation by Wallace, expressed on the face of the pictures, that his show was going to do these things. All these posters contain reading matter indicating that these were pictures of acts to be done in the Wallace Shows, and they all included pictures of Mr. Wallace himself.

They were prints and the copyright inscription was insufficient. But for the provision in the first clause of this act the inscription, "Copyright, 1898, Courier Litho. Co., Buffalo, N. Y.," would have been fatal to the plaintiffs' right of action. *Thompson* v. *Hubbard*, 131 U. S. 123. The inscription prescribed by section 4962 of the Revised Statutes was otherwise indispensable to the maintenance of an action for the infringement of a copyright. The notice given on each one of these pictures was that authorized by the act of June 18, 1874. Having thus availed themselves of the provisions of this act,

clearly the plaintiffs are not in position to claim that the pictures are not covered by its provisions. Again, if these pictures were chromos, and not prints, cuts or engravings, then under the allegations of the petition they were not admissible in evidence because they were not in support of the allegations of the petition. As to what a chromo is and how statute should be construed, *Yuengling* v. *Schile*, 12 Fed. Rep. 107; *Bolles* v. *Outing Company*, 175 U. S. 262; *Thornton* v. *Schreiber*, 124 U. S. 612; *Rosenbach* v. *Dreyfuss*, 2 Fed. Rep. 217; *Ehret* v. *Pierce*, 10 Fed. Rep. 554; *S. C.*, 18 Blatch. 302; *Schumacher* v. *Wogram*, 35 Fed. Rep. 210; *Higgins* v. *Kueffel*, 140 U. S. 428. As to advertisements and copyrights, citing *Cobbett* v. *Woodward*, L. R. 14 Eq. 407, cited with approval by this court in *Baker* v. *Selden*, 101 U. S. 106; *Clayton* v. *Stone & Hall*, 2 Paine, 392; *Mott Iron Works* v. *Clow*, 82 Fed. Rep. 216.

There was no evidence tending to show that the plaintiffs themselves, or either of them, were the authors of these prints. It was claimed that they were the proprietors because, as they also claimed, the design or conception was that of their employés, working for them, under salaries, and that their designs were the property of the employer. If they were not themselves the authors, then it was incumbent upon them to allege how they acquired title as proprietors from the author, inventor or designer. *Lithographic Co.* v. *Sarony*, 111 U. S. 53; *Nottage* v. *Jackson*, 11 Q. B. D. 627; *Atwell* v. *Ferret*, 2 Blatch. 46; *Bimms* v. *Woodworth*, 4 Wash. C. C. Rep. 48; *Black* v. *Allen Co.*, 42 Fed. Rep. 618; *S. C.*, 56 Fed. Rep. 764; *Press Pub. Co.* v. *Falk*, 59 Fed. Rep. 524; *Pollard* v. *Photograph Co.*, 40 Ch. Div. 345; *Moore* v. *Rugg*, 46 N. W. 141; *Dielman* v. *White*, 102 Fed. Rep. 892; *Parton* v. *Prang*, 3 Clifford, 537; *Little* v. *Good*, 2 Blatch. 166.

It is incumbent upon the plaintiffs, in a case like this, for the recovery of penalties, to allege and to prove as alleged, every fact essential to the validity of their copyright. *Jones* v. *Van Zandt*, 5 How. 372.

The copyright law does not protect what is immoral in its tendency. A print representing unchaste acts or scenes calculated to excite lustful or sensual desires in those whose minds

are open to such influences, and to attract them to witness the performance of such scenes, is manifestly of that character. It is the young and immature and those who are sensually inclined who are liable to be influenced by such scenes and representations, and it is their influence upon such persons that should be considered in determining their character. *Broder* v. *Zeno Mauvais Music Co.*, 88 Fed. Rep. 74; *Dunlop* v. *United States*, 165 U. S. 501; *Martinetti* v. *Maguire*, Fed. Cases, No. 9173, *The Black Crook* case.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes here from the United States Circuit Court of Appeals for the Sixth Circuit by writ of error. Act of March 3, 1891, c. 517, § 6, 26 Stat. 828. It is an action brought by the plaintiffs in error to recover the penalties prescribed for infringements of copyrights. Rev. Stat. §§ 4952, 4956, 4965, amended by act of March 3, 1891, c. 565, 26 Stat. 1109, and act of March 2, 1895, c. 194, 28 Stat. 965. The alleged infringements consisted in the copying in reduced form of three chromolithographs prepared by employés of the plaintiffs for advertisements of a circus owned by one Wallace. Each of the three contained a portrait of Wallace in the corner and lettering bearing some slight relation to the scheme of decoration, indicating the subject of the design and the fact that the reality was to be seen at the circus. One of the designs was of an ordinary ballet, one of a number of men and women, described as the Stirk family, performing on bicycles, and one of groups of men and women whitened to represent statues. The Circuit Court directed a verdict for the defendant on the ground that the chromolithographs were not within the protection of the copyright law, and this ruling was sustained by the Circuit Court of Appeals. *Courier Lithographing Co.* v. *Donaldson Lithographing Co.*, 104 Fed. Rep. 993.

There was evidence warranting the inference that the designs belonged to the plaintiffs, they having been produced by persons employed and paid by the plaintiffs in their establishment to make those very things. *Gill* v. *United States*, 160 U. S. 426,

435 ; *Colliery Engineer Company* v. *United Correspondence Schools Company*, 94 Fed. Rep. 152 ; *Carte* v. *Evans*, 27 Fed. Rep. 861. It fairly might be found also that the copyrights were taken out in the proper names. One of them was taken out in the name of the Courier Company and the other two in the names of the Courier Lithographing Company. The former was the name of an unincorporated joint stock association formed under the laws of New York, Laws of 1894, c. 235, and made up of the plaintiffs, the other a trade variant on that name. *Scribner* v. *Clark*, 50 Fed. Rep. 473, 474, 475 ; *S. C.*, *sub nom. Belford* v. *Scribner*, 144 U. S. 488.

Finally, there was evidence that the pictures were copyrighted before publication. There may be a question whether the use by the defendant for Wallace was not lawful within the terms of the contract with Wallace, or a more general one as to what rights the plaintiffs reserved. But we cannot pass upon these questions as matter of law ; they will be for the jury when the case is tried again, and therefore we come at once to the ground of decision in the courts below. That ground was not found in any variance between pleading and proof, such as was put forward in argument, but in the nature and purpose of the designs.

We shall do no more than mention the suggestion that painting and engraving unless for a mechanical end are not among the useful arts, the progress of which Congress is empowered by the Constitution to promote. The Constitution does not limit the useful to that which satisfies immediate bodily needs. *Burrow-Giles Lithographic Co.* v. *Sarony*, 111 U. S. 53. It is obvious also that the plaintiffs' case is not affected by the fact, if it be one, that the pictures represent actual groups—visible things. They seem from the testimony to have been composed from hints or description, not from sight of a performance. But even if they had been drawn from the life, that fact would not deprive them of protection. The opposite proposition would mean that a portrait by Velasquez or Whistler was common property because others might try their hand on the same face. Others are free to copy the original. They are not free to copy the copy. *Blunt* v. *Patten*, 2 Paine, 397, 400. See *Kelly* v.

*Morris,* L. R. 1 Eq. 697 ; *Morris* v. *Wright,* L. R. 5 Ch. 279.
The copy is the personal reaction of an individual upon nature.
Personality always contains something unique. It expresses
its singularity even in handwriting, and a very modest grade
of art has in it something irreducible, which is one man's alone.
That something he may copyright unless there is a restriction
in the words of the act.

If there is a restriction it is not to be found in the limited
pretensions of these particular works. The least pretentious
picture has more originality in it than directories and the like,
which may be copyrighted. Drone, Copyright, 153. See *Henderson* v. *Tomkins,* 60 Fed. Rep. 758, 765. The amount of
training required for humbler efforts than those before us is
well indicated by Ruskin. "If any young person, after being
taught what is, in polite circles, called ' drawing,' will try to
copy the commonest piece of real *work*,—suppose a lithograph
on the title page of a new opera air, or a woodcut in the cheap-
est illustrated newspaper of the day—they will find themselves
entirely beaten." Elements of Drawing, 1st ed. 3. There is
no reason to doubt that these prints in their *ensemble* and in all
their details, in their design and particular combinations of fig-
ures, lines and colors, are the original work of the plaintiffs'
designer. If it be necessary, there is express testimony to that
effect. It would be pressing the defendant's right to the verge,
if not beyond, to leave the question of originality to the jury
upon the evidence in this case, as was done in *Hegeman* v.
*Springer,* 110 Fed. Rep. 374.

We assume that the construction of Rev. Stat. § 4952, allow-
ing a copyright to the " author, inventor, designer, or proprietor
. . . of any engraving, cut, print . . . [or] chromo " is
affected by the act of 1874, c. 301, § 3, 18 Stat. 78, 79. That
section provides that " in the construction of this act the words
' engraving,' ' cut ' and ' print ' shall be applied only to pictorial
illustrations or works connected with the fine arts." We see no
reason for taking the words " connected with the fine arts " as
qualifying anything except the word " works," but it would not
change our decision if we should assume further that they also
qualified " pictorial illustrations," as the defendant contends.

These chromolithographs are "pictorial illustrations." The word "illustrations" does not mean that they must illustrate the text of a book, and that the etchings of Rembrandt or Steinla's engraving of the Madonna di San Sisto could not be protected to-day if any man were able to produce them. Again, the act however construed, does not mean that ordinary posters are not good enough to be considered within its scope. The antithesis to "illustrations or works connected with the fine arts" is not works of little merit or of humble degree, or illustrations addressed to the less educated classes; it is "prints or labels designed to be used for any other articles of manufacture." Certainly works are not the less connected with the fine arts because their pictorial quality attracts the crowd and therefore gives them a real use—if use means to increase trade and to help to make money. A picture is none the less a picture and none the less a subject of copyright that it is used for an advertisement. And if pictures may be used to advertise soap, or the theatre, or monthly magazines, as they are, they may be used to advertise a circus. Of course, the ballet is as legitimate a subject for illustration as any other. A rule cannot be laid down that would excommunicate the paintings of Degas.

Finally, the special adaptation of these pictures to the advertisement of the Wallace shows does not prevent a copyright. That may be a circumstance for the jury to consider in determining the extent of Mr. Wallace's rights, but it is not a bar. Moreover, on the evidence, such prints are used by less pretentious exhibitions when those for whom they were prepared have given them up.

It would be a dangerous undertaking for persons trained only to the law to constitute themselves final judges of the worth of pictorial illustrations, outside of the narrowest and most obvious limits. At the one extreme some works of genius would be sure to miss appreciation. Their very novelty would make them repulsive until the public had learned the new language in which their author spoke. It may be more than doubted, for instance, whether the etchings of Goya or the paintings of Manet would have been sure of protection when seen for the first time. At the other end, copyright would be denied to

pictures which appealed to a public less educated than the judge. Yet if they command the interest of any public, they have a commercial value—it would be bold to say that they have not an aesthetic and educational value—and the taste of any public is not to be treated with contempt. It is an ultimate fact for the moment, whatever may be our hopes for a change. That these pictures had their worth and their success is sufficiently shown by the desire to reproduce them without regard to the plaintiffs' rights. See *Henderson* v. *Tomkins*, 60 Fed. Rep. 758, 765. We are of opinion that there was evidence that the plaintiffs have rights entitled to the protection of the law.

> *The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is also reversed and the cause remanded to that court with directions to set aside the verdict and grant a new trial.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE McKENNA, dissenting.

Judges Lurton, Day and Severens, of the Circuit Court of Appeals, concurred in affirming the judgment of the District Court. Their views were thus expressed in an opinion delivered by Judge Lurton : " What we hold is this : That if a chromo, lithograph, or other print, engraving, or picture has no other use than that of a mere advertisement, and no value aside from this function, it would not be promotive of the useful arts, within the meaning of the constitutional provision, to protect the 'author' in the exclusive use thereof, and the copyright statute should not be construed as including such a publication, if any other construction is admissible. If a mere label simply designating or describing an article to which it is attached, and which has no value separated from the article, does not come within the constitutional clause upon the subject of copyright, it must follow that a pictorial illustration designed and useful only as an advertisement, and having no intrinsic value other than its function as an advertisement, must be equally without the obvious meaning of the Constitution.

JUSTICES HARLAN and McKENNA, dissenting.

It must have some connection with the fine arts to give it intrinsic value, and that it shall have is the meaning which we attach to the act of June 18, 1874, amending the provisions of the copyright law. We are unable to discover anything useful or meritorious in the design copyrighted by the plaintiffs in error other than as an advertisement of acts to be done or exhibited to the public in Wallace's show. No evidence, aside from the deductions which are to be drawn from the prints themselves, was offered to show that these designs had any original artistic qualities. The jury could not reasonably have found merit or value aside from the purely business object of advertising a show, and the instruction to find for the defendant was not error. Many other points have been urged as justifying the result reached in the court below. We find it unnecessary to express any opinion upon them, in view of the conclusion already announced. The judgment must be affirmed." *Courier Lithographing Co.* v. *Donaldson Lithographing Co.*, 104 Fed. Rep. 993, 996.

I entirely concur in these views, and therefore dissent from the opinion and judgment of this court. The clause of the Constitution giving Congress power to promote the progress of science and useful arts, by securing for limited terms to authors and inventors the exclusive right to their respective works and discoveries, does not, as I think, embrace a mere advertisement of a circus.

MR. JUSTICE McKENNA authorizes me to say that he also dissents.