In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2899

CATHERINE CONRAD,

*Plaintiff-Appellant,*

*v.*

AM COMMUNITY CREDIT UNION, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:13-cv-00461-bbc — **Barbara B. Crabb**, *Judge.*

SUBMITTED MARCH 19, 2014 — DECIDED APRIL 14, 2014

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* Catherine Conrad, the plaintiff, is a self-employed singing and dancing entertainer (also a writer and motivational speaker, see "Bananaland," www. bananalady.com/about.htm, visited on April 10, 2014, as were the other websites cited in this opinion). She calls herself the "Banana Lady" and performs wearing a costume in the shape of a giant banana. You can watch her dancing the "Banana Shake" on YouTube, www.youtube.com/watch?

v=DG-QJWW6w5c. Here is a still photo, which is in the record, of her performing in her costume.



Proceeding pro se, Conrad has sued several credit unions in this case, together with a trade association of credit unions and employees of the institutional defendants, charging a variety of infringements of her intellectual property rights. The district judge granted the defendants' motion to dismiss the case. She noted that most of Conrad's claims were pre-

cluded by an earlier suit that she'd filed and lost in a Wisconsin state court—and just last month the dismissal of her claims in that suit was affirmed. *Rigsby v. AM Community Credit Union*, 2014 WL 1059048 (Wis. App. March 20, 2014) (per curiam). That left just the claim of copyright infringement, over which federal courts have exclusive jurisdiction but which the district judge dismissed on the ground that the claim had no merit.

The defendants had hired Conrad to perform a "singing telegram" at a credit union trade association event. "Singing telegrams are a hilarious way to send a message that is a lot more fun than sending a fax, email, instant message or greeting card. Services that provide these telegrams will be happy to send someone over to sing, dance, or act out your message to the recipient. They'll even dress up to do it, in anything from a tuxedo and top hat to a gorilla suit! Singing telegrams spread cheer by bringing laughs into the workplace, home, public engagement, or party. You can hire 'Marilyn Monroe' to sing *Happy Birthday* to your boss, or 'Elvis' to sing *All Shook Up* to your wife on your 10th anniversary!" "What Are Singing Telegrams?," *wiseGEEK*, www. wisegeek.com/what-are-singing-telegrams.htm.

Conrad alleges (and for purposes of the appeal we take her factual allegations to be true) that she told the arrangers (who are the principal individual defendants) that members of the audience were not to take photos or videos of her performance except for their "personal use," which she believes, somewhat implausibly, excludes posting any of the photos on the photo taker's Facebook page. She further alleges that the arrangers failed to inform the audience of the limitation to personal use until her performance had ended, and that

members of the audience (including some of the arrangers) took photos and made videos that they then posted on internet websites.

Conrad has copyrights, which we'll assume are valid, on photographs and sculptures of her in her banana costume. She has also registered a copyright on the costume itself, but there is doubt (not necessary for us to resolve) about the validity of that copyright because banana costumes quite similar to hers are, we are surprised to discover, a common consumer product. See, e.g., "Adult Banana Costumes," *Google*, www.google.com/#q=adult+banana+costumes&tbm=shop.

The performance itself was not copyrighted or even copyrightable, not being "fixed in any tangible medium of expression." 17 U.S.C. § 102(a); see, e.g., *Kelley v. Chicago Park District*, 635 F.3d 290, 303–04 (7th Cir. 2011); *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 675 (7th Cir. 1986); *United States v. Moghadam*, 175 F.3d 1269, 1280–81 (11th Cir. 1999); 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 2.03[B], p. 2-32 (Aug. 2004). To comply with the requirement of fixity she would have had either to have recorded the performance or to have created a written "dance notation" of it. See *Martha Graham School & Dance Foundation, Inc. v. Martha Graham Center of Contemporary Dance, Inc.*, 380 F.3d 624, 632 and n. 13 (2d Cir. 2004); *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 160 and n. 3 (2d Cir. 1986); "Dance Notation," *Wikipedia*, http://en.wikipedia.org/wiki/Dance_notation. She did neither.

Photos or videos made by members of the audience could conceivably have been either reproductions of, or works derivative from—that is, creative variants of, *Gracen v.*

*Bradford Exchange*, 698 F.2d 300, 304–05 (7th Cir. 1983)—copyrighted elements of Conrad's performance, such as the costume (if it is copyrightable). And she has the exclusive right to create or license reproductions of and derivative works from works that she has validly copyrighted. 17 U.S.C. §§ 106(1), (2). It's unlikely that the photos and videos were derivative works; to be such a work, a photograph, or any other copy, must have an element of originality, *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 519 (7th Cir. 2009); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076–77 (9th Cir. 2000)—some modicum of creativity added to the copyrighted work. Cf. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345 (1991)**;** *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 249–50 (1903) (Holmes, J.); *Jewelers' Circular Publishing Co. v. Keystone Publishing Co.*, 274 F. 932, 934 (S.D.N.Y. 1921) (L. Hand, J.). "To extend copyrightability to minuscule variations would simply put a weapon for harassment in the hands of mischievous copiers intent on appropriating and monopolizing public domain work." *L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486, 492 (2d Cir. 1976) (en banc). But whether the photos or videos were mere depictions, or sufficiently departed from the originals to be derivative works, they would violate Conrad's copyrights if the copyrights covered material that members of the audience duplicated in their photos and videos.

She had, it is true, authorized the arrangers of the trade association event to permit the members of the audience to take photos, or make videos, for their personal use. But that was a limited license. We don't know how limited; but maybe it didn't authorize posting photos or videos on the internet, or at least on some of the internet sites on which they were posted; and in that event such posting may have vio-

lated the provision of the Copyright Act that forbids unauthorized video or tape recording of a musical performance, 17 U.S.C. § 1101(a), or the provision that forbids the unauthorized public display of copyrighted musical or choreographic works. § 106(5). The arrangers might therefore be charged with having induced violation of those provisions. Cf. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). But Conrad does not invoke either provision, and probably couldn't because one of the arrangers advised the audience of the prohibition at the end of the performance—and Conrad doesn't contend that any photos or videos of it were posted on the internet before the performance ended.

So her suit has no merit. But we cannot end this opinion without remarking her abuse of the legal process by incessant filing of frivolous lawsuits. This is at least the eighth case she's filed in federal court since 2009, and she has filed at least nine cases in state court just since 2011. (See wcca.wicourts.gov/caseSearchSelect.xsl for a list of cases filed in Dane County, Wisconsin, in which one party is named "Catherine Conrad.") She appears not to have won any judgments, but she did obtain settlements in the first three federal suits that she filed.

She once sued event organizers who mailed persons attending the event a postcard that had a picture of her in her banana costume. On another occasion she sued persons who videotaped her performance but *declined* to post the video on their website after she demanded a $40,000 license fee; her theory was that the recording infringed her copyright even though she had consented to it and that the individual defendants' decision not to post the video (and thus avoid pay-

ing the license fee) constituted tortious interference with her business. The defendants obtained summary judgment in that suit after enduring 15 months of litigation.

She has filed suits in state and federal court against her former lawyers, and once sued her web hosting company for taking down her web site after she failed to pay the bill. The web host had paid $4000 to compensate her for "lost business" while the web site was down—even though it was down because of her failure to pay. She pocketed the $4000 but sued the web host—and in both state and federal court—anyway.

Her previous state-court complaint against persons who are defendants in the present case accused one of them of being "armed and dangerous," compared him to the Unabomber, and suggested that "someone from Homeland Security or Fort Know" (she must have meant Fort Knox) should take his "threats seriously." She didn't specify what those threats were, or whether she meant that he had made threats or that *he* posed a threat. She demanded that another defendant both admit having been "physically present at the Kennedy Compound located in Boston, MA" (presumably she meant Hyannis Port, not Boston) on the day before or the day of the trade association event involved in this case and produce all her travel documents for those days.

The defendants in one of Conrad's federal suits were awarded more than $55,000 in costs and fees, pursuant to 17 U.S.C. § 505, which authorizes the award of costs, including a reasonable attorney's fee, to the prevailing party in a copyright suit. She has been sanctioned at least $23,000 in her state court suits on the authority of Wis. Stat. §§ 802.05(3), 895.044, and possibly $73,000 more in one of the suits,

though we can't be sure just why her company was ordered to pay that amount to the defendants in that suit.

Despite all this and the fact that she hasn't complied in full (or, so far as we are aware, in part—she is in desperate financial circumstances) with the financial obligations that the courts have imposed on her, the federal district court for the Western District of Wisconsin has continued to allow her to file suits in forma pauperis. It should consider enjoining her from filing further suits until she pays her litigation debts.

AFFIRMED.