GEAR, INC., Plaintiff,

v.

L.A. GEAR CALIFORNIA, INC.; L.A. Gear Licensing Corp.; L.A. Gear Ltd.; Robert Y. Greenberg; Doe Spun, Inc.; Calabash Fashion Ltd.; Ocean Trends, Inc. and S.T.S. Graphics, Inc., Defendants.

No. 85 Civ. 4754 (CSH).

United States District Court, S.D. New York.

March 26, 1986.

Pennie & Edmonds, New York City, for plaintiff; Walter G. Marple, Judith D. Cohen, of counsel.

Speyer, Thurm, Perlberg & Heller, New York City, Arant, Kleinberg & Lerner, Los Angeles, Cal., for defendant L.A. Gear; Marshall A. Lerner, Los Angeles, Cal., Milton Thurm, New York City, of counsel.

HAIGHT, District Judge:

Plaintiff Gear, Inc. ("Gear" or "plaintiff") brings this action for alleged trademark infringement, dilution and unfair competition. The verified complaint (the "complaint"), filed July 26, 1985, named only L.A. Gear Ltd. ("L.A. Ltd."). Gear filed a verified amended complaint (the "amended complaint" or "am. complaint") on October 18, 1985 adding the remaining defendants.[1] The gravamen of the complaint and amended complaint is that defendants' use of "L.A. Gear" as a trademark and in corporate names constitutes unlawful infringement. L.A. Ltd. moves to dismiss for lack of *in personam* jurisdiction, and defendants L.A. Ltd., L.A. Gear California, Inc. ("L.A. California"), L.A. Gear Licensing Corp. ("L.A. Licensing") (the "L.A. Defendants"), and their president and chief executive officer, Robert Y. Greenberg (collectively, the "defendants") move to dismiss for insufficient service of process. Gear moves for a preliminary injunction, and defendants cross-moved for summary judgment. Finally, Gear seeks summary judgment on its own behalf. For the reasons which follow, defendants' motions to dismiss on jurisdictional grounds are denied, and Gear's motion for a preliminary injunction is denied. The cross-motions for summary judgment are denied.

## I. *Service of Process and Compliance with Rule 4(j)*

Defendants challenge the timeliness of service of process under Rule 4(j), F.R.

---

1. Doe-Spun, Inc. and Calabash Fashion, Inc. have been dismissed from the action by stipulation. Settlement negotiations are ongoing and are reportedly near success as to Ocean Trends, Inc. and S.T.S. Graphics, Inc. and they have not participated in the pending motions. Therefore, for convenience, defendants L.A. Gear California, Inc., L.A. Gear Licensing Corp., L.A. Gear, Ltd. and Robert Y. Greenberg will collectively be referred to in this opinion as "defendants."

Civ.P. The original complaint was filed on July 26, 1985, and service was attempted on July 30, 1985. (Affidavit of Louis Curto.) In its first pleading, original defendant L.A. Ltd. challenged the sufficiency of the July 30 service. After the amended complaint was filed on October 18, 1985, the newly added defendants joined this challenge. However, an affidavit of service by one Jerome P. Curtis was subsequently filed averring that the amended complaint was served by hand on Elliot Horowitz, chief financial officer for each of the L.A. Defendants, on December 25, 1985. Horowitz does not recall receiving service, but has conceded that he cannot be sure service was not so effected on that date. Accordingly, counsel for the L.A. Defendants and Greenberg has conceded that service was accomplished on that date. (Letter from Marshall A. Lerner to Court dated February 5, 1986).

Defendants contend, however, that the amended complaint should be dismissed pursuant to Rule 4(j), F.R.Civ.P. Rule 4(j) requires that a complaint be dismissed if service is not accomplished within 120 days of its filing unless good cause is shown for the delay.[2] Defendants concede, of course, that service on December 23, 1985 was within 120 days of the filing of the amended complaint on October 18, 1985. But defendants contend that the 120 day period as to L.A. Ltd. began to run on July 26, 1985, when the original complaint was filed, and that the attempted service on July 30, 1985 was fatally flawed. Since in defendants' view the 120 day clock began to run against L.A. Ltd. on July 26, 1985, and since no effective service was made until December 23, 1985, they contend the action should be dismissed pursuant to Rule 4(j).

■ Whether or not defendants are correct that the July 30 attempt at service was flawed—upon which I express no present view—I do not believe dismissal is required by Rule 4(j).

Rule 4(j) provides that a dismissal for failure timely to serve the complaint is "without prejudice." Thus, it clearly contemplates that even if a complaint is dismissed for failure to serve within 120 days of filing, a new complaint may be filed. That contemplation would be frustrated if the 120 day clock on the new complaint began to run when the old complaint was filed.[3]

Furthermore, Rule 4(j) provides that failure to accomplish service within the 120 day period may be excused for "good cause." Plaintiff attempted service of the original complaint on July 20, 1985—only four days after it was filed. After obtaining an extension of time to move or answer until October 3, 1985, L.A. Ltd. moved to dismiss, claiming that service of process was insufficient. Plaintiff disputed that claim; and although I need not resolve the merits of that dispute, I do not find plaintiff's defense of its attempt at service frivolous. Much of the 120 day period was consumed awaiting L.A. Ltd.'s first pleading—a period during which plaintiff had no reason to believe service would be challenged. Since plaintiff then proffered at least arguably meritorious reasons why service had been sufficient, plaintiff has amply justified any delay in service of the original complaint.

The other defendants argue that the filing of the original complaint on July 26, 1985 should also start the 120–day clock running, as to them. Their theory—for which they concede they have no authority—is that their 120 day period should relate back to July 26 because, in their view, plaintiff would have named them in the

---

**2.** F.R.Civ.P. 4(j) provides, in pertinent part:

Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

**3.** No statute of limitations issue has been presented in this case. I do not undertake to decide whether an amended complaint filed and served in these circumstances should relate back to the date of filing of the original complaint. See F.R.Civ.P. 15(c).

original complaint if it had exercised due diligence in determining the identities of those responsible for "L.A. Gear" products.

■ Since I have determined that the 120 day period started to run anew as to L.A. Ltd. when the amended complaint was filed, the same conclusion applies *a fortiorari* to the defendants who were not even named in the original complaint. But I also conclude that defendants' proposed extension of Rule 4(j) is unsound. Defendants offer neither authority nor compelling policy reason for departing from Rule 4(j)'s plain language, and I see no need for such an interpretation. Defendants are protected by the applicable statutes of limitation if plaintiffs fail diligently to investigate the proper parties to their suits. And once the complaint has been filed against them and the statute of limitations tolled, they are protected against undue delays in service by the clear mandate of Rule 4(j).

Defendants' motion to dismiss for failure timely to serve is therefore denied.

■ Plaintiff originally attempted to serve the amended complaint by first class mail, return receipt requested with forms of notice and acknowledgement enclosed. *See* F.R.Civ.P. 4(c)(2)(C)(ii). The acknowledgements were never returned. (Affidavit of Judith D. Cohen dated December 23, 1985 ¶ 4.) Plaintiff therefore proceeded with personal service and moves this Court to order defendants to pay the costs of personal service of the amended complaint pursuant to Rule 4(c)(2)(D), F.R.Civ.P. (Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Dismiss the Action, at 4–5.) Defendants have not offered any reasons for their failure to return the acknowledgements. Accordingly, I grant plaintiff the costs of personally serving the amended complaint. *See* F.R. Civ.P. 4(c)(2)(D) (court "shall order" payment of costs of personal service where acknowledgement not returned "unless good cause is shown"). The costs incurred must be shown by affidavit.

## II. *Personal Jurisdiction Over L.A. Ltd.*

L.A. Ltd. moves to dismiss the amended complaint for lack of personal jurisdiction.

The amended complaint alleges on information and belief, that L.A. Ltd. offers products bearing the infringing marks at their California place of business and "participates in tortious acts" committed in New York. (Am. Complaint ¶ 6). It goes on to allege, on information and belief, that Greenberg is the "alter ego" of L.A. Ltd. (Am. Complaint ¶ 7).

In affidavits submitted in support of L.A. Ltd's motion to dismiss and the other pending motions, defendant Greenberg avers as follows. Greenberg is the president and chief executive officer and a 40% owner of all three L.A. Defendants. (Greenberg Declaration dated December 4, 1985, herein after "Dec. 4 Greenberg Decl.", ¶ 1) L.A. Ltd. is a California corporation. It is "neither a parent nor a subsidiary" of the other two L.A. Defendants. (Dec. 4 Greenberg Decl. ¶ 1). Its only business is retail sales at a store in Los Angeles, California. As its president, Greenberg is "generally aware" of L.A. Ltd's operations but is not involved with L.A. Ltd. on a "day-to-day basis." (Greenberg Declaration dated November 26, 1985, hereinafter "Nov. 26 Greenberg Decl.," ¶¶ 2–4.) L.A. Ltd. does no business in New York; all its business is conducted at the Los Angeles store. It has no mail or telephone order business. (Nov. 26 Greenberg Decl. ¶¶ 5–6). Other than the allegations of the verified amended complaint, plaintiff offers nothing to rebut these assertions.

■ Federal courts look to the long-arm statute of the forum state—constrained, of course, by the due process clause—to determine whether personal jurisdiction can be obtained over a nondomiciliary defendant. *United States v. First National City Bank,* 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Marsh v. Kitchen,* 480 F.2d 1270, 1272 n. 6 (2d Civ.1973); F.R.Civ.P. 4(e), (f). Plaintiff contends that jurisdiction over L.A. Ltd. is authorized by Section 302 of New York's Civil Practice Law and Rules. Plaintiff argues in the alternative that it should be permitted discovery to establish the relationships among the L.A. Defendants and Greenberg.

Section 302 of the C.P.L.R. authorizes courts to exercise personal jurisdiction over nondomiciliaries with contacts in New York of certain qualities and quantities. Specifically, it provides for long-arm jurisdiction over nondomiciliaries that transact business in New York, contract to supply goods or services in New York, or commit a tortious act within the state. C.P.L.R. § 302(a)(1), (2). It also provides for jurisdiction based on tortious acts committed without the state which cause injury in New York, if the defendant engages in a course of conduct in New York or derives "substantial revenue" from "goods used or consumed or services rendered" in New York, or if the defendant "expects or should reasonably expect the (tortious) act to have consequences in the state and derives substantial revenue from interstate or international commerce." C.P.L.R. § 302(a)(3).[4]

New York courts have construed this reasonable expectation provision in light of limits on long-arm jurisdiction set forth in the United States Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). *See, e.g., Martinez v. American Standard*, 91 A.D.2d 652, 653, 457 N.Y.S.2d 97, 98–99 (2d Dep't. 1982), *aff'd*, 60 N.Y.2d 873, 458 N.E.2d 826, 470 N.Y. S.2d 367 (1983). Thus, "the mere likelihood" that a product sold by defendant will make its way into New York is not suffi-

cient under section 302. Defendant must, by some act, "purposefully avail( ) itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.'" *Id.* at 653–54, 457, N.Y.S.2d at 99 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958)). *See also* McLaughlin, Supplementary Practice Commentaries to C.P.L.R. § 302, at 44 (McKinney Supp.1986). Plaintiff has the burden of establishing personal jurisdiction. *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir. 1981); *Socialist Worker's Party v. Attorney General of United States*, 375 F.Supp. 318, 326 (S.D.N.Y.1974). If, as here, no preliminary hearing is held on the question of jurisdiction, plaintiff's burden is only to establish a *prima facie* showing of jurisdiction. *Visual Sciences, supra*, 660 F.2d at 58.[5]

 Plaintiff has failed to meet this burden. Except for the conclusory allegations of the amended complaint that L.A. Ltd. "participates in tortious activities" in New York, it is uncontradicted that L.A. Ltd's only activity is its retail store in Los Angeles. There is no evidence that L.A. Ltd. itself has done anything at all in New York. The mere possibility that products sold in Los Angeles which bear the allegedly infringing mark will make their way into New York does not afford long-arm

---

**4.** N.Y.Civ.Prac.Law § 302 provides in pertinent part:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. Transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of con-

duct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; ...

**5.** Although plaintiff need only make out a *prima facie* case of jurisdiction to fend off a motion to dismiss, it must meet a higher burden before preliminary relief will be granted. *Visual Sciences*, 660 F.2d at 59 ("plaintiff must 'adequately establish that there is at least a reasonable probability of ultimate success upon the question of jurisdiction when the action is tried on the merits.'") (quoting *Industrial Electronics Corp. v. Cline*, 330 F.2d 480, 482 (3d Civ.1964)). Since plaintiff has not even made out a *prima facie* case of jurisdiction over L.A. Ltd., it has obviously not met this higher burden.

jurisdiction pursuant to C.P.L.R. 302. *See Martinez, supra,* 91 A.D.2d at 653–54, 457 N.Y.S.2d at 98–99. Nor is it sufficient that L.A. Ltd.'s activities in California might have an impact on plaintiff's efforts to preserve the exclusivity of its mark in New York. *See Lehigh Valley Industries v. Birenbaum,* 527 F.2d 87, 94 (2d Cir.1975) ("section 302(a)(3) is not satisfied by remote or consequential injuries such as lost profits which occur in New York only because the plaintiff is domiciled or doing business here").

Plaintiff asserts on information and belief, however, that defendant Greenberg—over whom jurisdiction is not challenged [6]—is L.A. Ltd's "alter ego." Jurisdiction over corporations which cannot be subjected to long-arm jurisdiction based on their own activities has occasionally been predicated upon activities in the forum state of their "alter egos." *See, e.g., Volkswagenwerk Aktiengesellschaft v. Beech Aircraft,* 751 F.2d 117, 120–23 (2d Cir.1984); *Andrulonis v. United States,* 526 F.Supp. 183, 188–90 (N.D.N.Y.1981). But the corporate form is not lightly disregarded. Common ownership or control is not enough. *Volkswagenwerk, supra,* 751 F.2d at 120; *United States Barite Corp v. M.V. Harris,* 534 F.Supp. 328, 330 (S.D.N.Y.1982). The proponent of the alter ego theory must show either that the corporate form was being used fraudulently, or that the corporate form was disregarded by the related entities themselves. *Id.* at 329; *see also Volkswagenwerk, supra,* 751 F.2d at 120. It is a question of the functional, not formal, relationship between the corporation and its alleged "alter ego." *Andrulonis, supra,* 526 F.Supp. at 188.

There is no basis on the present record to subject L.A. Ltd. to long arm jurisdiction in New York based on the activities of Greenberg or either of the other L.A. Defendants. Greenberg avers that he is a 40% owner and the president and chief executive officer of all three L.A. Defendants. He avers that he is not involved in the day-to-day management of L.A. Ltd.,

though he is "generally aware" of its operations. Greenberg also states that L.A. Ltd. is "neither a parent nor a subsidiary of L.A. California nor L.A. Gear Licensing." (Nov. 26 Greenberg Decl. ¶¶ 1, 4). It also appears that the three L.A. Defendants share a chief financial officer—Elliot Horowitz. (Horowitz Decl. ¶ 1). But there is no evidence in the record that the independant corporate form of any of the L.A. Defendants has been disregarded. On this record, plaintiff has failed to establish that L.A. Ltd. should be subjected to jurisdiction in New York on the basis of the activities in this state of Greenberg or the other L.A. Defendants.

My conclusion that there is no basis on the present record for asserting long-arm jurisdiction over L.A. Ltd. does not mean, however, that I must *a priori* grant the motion to dismiss L.A. Ltd. Although plaintiff bears the burden of establishing personal jurisdiction, it is well-established that district courts have the discretion to grant discovery to explore factual issues presented by the Rule 12(b)(2) motion. *Visual Sciences, Inc., supra,* 660 F.2d at 58 (2d Cir.1981). *See also Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 n. 13, 98 S.Ct. 2380, 2389 n. 13, 57 L.Ed.2d 253 (1978) (discovery is available on jurisdictional issues). Discovery need not be granted to allow plaintiff to engage in an unfounded fishing expedition for jurisdictional facts, *see International Terminal Operating Co. v. Skibs A/S Hidlefjord,* 63 F.R.D. 85, 87 (S.D.N.Y.1973); and plaintiff's basis for questioning L.A. Ltd's jurisdictional defense is concededly thin. But it is clear that L.A. Ltd., Greenberg and the other L.A. Defendants are interrelated. They appear to share a product line, a president and chief executive officer, a chief financial officer, and at least one major shareholder. Moreover, Greenberg's assertion that L.A. Ltd. is "neither parent nor a subsidiary" of L.A. California or L.A. Licensing leaves the actual relationship among the defendants something of a mys-

---

6. In its memorandum of law in opposition to Defendants' motion to dismiss, at 8–9, plaintiff argues that jurisdiction over Greenberg is prop-

er. Plaintiff appears to be attacking a straw man, for Greenberg does not appear to contest long-arm jurisdiction.

tery. Finally, the facts regarding the relationships among the defendants are within their particular knowledge. *See Vespe Contracting Co. v. Anvan Corp.*, 433 F.Supp. 1226, 1233 n. 9 (E.D.Pa.1977). The more prudent course, then, is to allow plaintiff a reasonable discovery regarding the relationships among the various defendants.[7] *See e.g. River Plate Corp. v. Forestal Land Timber and Railway Co.*, 185 F.Supp. 832, 836 (S.D.N.Y.1960) (granting discovery on jurisdictional issues when relationship between the corporate defendants was unclear).

In principle, of course, it would be proper to limit discovery as to L.A. Ltd. to jurisdictional questions until that issue is resolved. Since defendants have common representation and at least partially overlapping personnel and officers, however, I will leave it to counsel in the first instance to cooperate in deciding how discovery on the various issues presented in this case can most efficiently be accomplished.

L.A. Ltd's motion is denied, without prejudice to renewal after if plaintiff, after reasonable discovery, continues to assert that jurisdiction can be had over L.A. Ltd.[8]

### III. *Plaintiff's Motion for a Preliminary Injunction*

Plaintiff's motion for preliminary relief requires a somewhat more detailed elaboration of the facts leading up to this suit. The relevant facts, in the view I take of the instant motion, are largely undisputed and are as follows. The following account is derived from the affidavits accompanying exhibits submitted by the parties on the pending cross-motions.

Plaintiff Gear was founded in 1978. (Am. Complaint ¶ 14). It is engaged in the design, manufacture and marketing of consumer merchandise. Gear's first products were fabric carrying bags and luggage. It has since expanded into interior design, children's clothing, and household products such as wallpaper, linen, and ceramics. (Am. Complaint ¶¶ 14–16). Plaintiff has obtained trademark registration for "Gear", "New Country Gear", "American Country Gear", and "Gearwear". An application for registration of "Gear (heart shape) Kids" for children's clothing is pending. (Am. Complaint ¶¶ 15, 17 and Ex. B, C thereto). In addition to its own manufacturing and marketing activities, Gear has established an apparently lucrative program for licensing the "Gear" trademark.

The mark "L.A. Gear" was originally created by Greenberg and several associates under the auspices of L.A. California's predecessor, "Goodtimes U.S.A., Inc." in 1982. Shortly thereafter, in March, 1983, L.A. California was incorporated to take over the "L.A. Gear" name and line (Dec. 4 Greenberg Decl. ¶ 7; Affidavit of Judith D. Cohen dated Nov. 13, 1985 ¶¶ 3, 6). The present status of Goodtimes U.S.A. Inc. is not clear but it does not appear to have any further relation to the subject matter of this lawsuit. L.A. Ltd. and L.A. Licensing were apparently incorporated sometime thereafter; the dates do not appear in the record. "L.A. Gear" has been registered as a trademark under L.A. California's ownership.

Defendants' product line is comprised largely of what the parties have termed "athleisure" wear and accessories. "L.A.

---

**7.** There is no factual ambiguity in the record regarding defendants' assertion that L.A. Ltd. itself has no contacts with New York sufficient to support long-arm jurisdiction. The remaining factual issues relate to the relationships among the various defendants. But, in the exercise of my discretion, I will not undertake to limit plaintiff's inquiry on the jurisdictional issues to the "alter ego" questions. As a practical matter, these issues may be intertwined with inquiry into L.A. Ltd.'s own activities. To attempt to limit discovery to the "alter ego" problem would simply invite unnecessary line-drawing disputes.

It is not inappropriate to note that any possible prejudice to L.A. Ltd. by permitting further discovery on this issue is considerably diminished by the fact that it shares counsel with the other defendants and shares key officers with the other L.A. defendants.

**8.** Of course, if after an opportunity for discovery, no good-faith basis for asserting jurisdiction over L.A. Ltd. appears, I expect that plaintiff will discontinue the instant action as to L.A. Ltd. *Cf. Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 252–54 (2d Cir.1985).

Gear" was first used on footwear, and footwear continues to be defendants' principal product line. (Dec. 4 Greenberg Decl. ¶ 4–5; "Horowitz Decl." ¶ 2). However, the "L.A. Gear" name also appeared on clothing starting early in 1983. Starting later in 1983, defendants began a program for licensing the "L.A. Gear" name. Its first licensing agreement, dated September 1, 1983, was with Doe-Spun, Inc. and Calabash Fashion Ltd. ("Doe-Spun/Calabash"). The license was for childrens' wear (Horowitz Decl. ¶ 7) and was effective December 1, 1983. (Dec. 4 Greenberg Decl. ¶ 15). "L.A. Gear" was also licensed to Ocean Trends, Inc. for use on fabric bags and totes for the period July 1, 1985 through June 3, 1986, and in an agreement dated October 19, 1984 S.T.S. Graphics took a license in the "L.A. Gear" name for T-shirts, seat suits and shirts, and knitted tops. (Horowitz Decl. ¶ 13).

It was apparently the defendants' licensing program which sparked this lawsuit. In May, 1984, an announcement appeared in *Women's Wear Daily* that Doe-Spun/Calabash had been licensed to produce children's clothing under the "L.A. Gear" mark. (Am. Complaint, Ex. G). Plaintiff's founder, president and chief executive officer, Bettye Martin Musham, saw this announcement and contacted her attorneys. On June 13, 1984, plaintiff's attorney, Walter Marple, wrote to Greenberg and asserted that the L.A. Defendants' use of the word "Gear" in their corporate name and as, a trade name infringed on Gear's trademark rights. (Ex. H to Am. Complaint, hereinafter referred to as the "June 13" letter.) Marple demanded that Greenberg abandon "Gear" and threatened legal action.

On June 19, 1984, defendants responded by letter through their counsel, Gil N. Schwartzberg (the "June 19 letter"). In the June 19 letter, Schwartzberg challenged the validity of "Gear" as a trademark, asserting that the term was generic. It is fair to characterize the letter as a clear expression of defendants' intent to continue using the "L.A. Gear" name.

In July 1984, an article on Greenberg and his plans for licensing "L.A. Gear" appeared in *Design and Fashion Licensing.* (Defendants' Ex. 39–6). In the article, Greenberg expresses his desire to create a license " 'that would be attractive worldwide'." The article described the expansion of "L.A. Gear" from shoes into sportswear and children's wear. It set forth Greenberg's intention of creating a separate licensing corporation—L.A. Licensing—and his hopes of further expansion. Musham saw the article and passed it along to her attorneys. (Musham Aff. ¶ 4). On August 2, 1984, Marple wrote to Schwartzberg regarding Schwartzberg's June 19 letter and the article in *Design and Fashion Licensing.* (Ex. H. to Am. Complaint, hereinafter the "August 2 letter"). Marple defended the validity of the "Gear" mark. He wrote that the defendants' activities described in the article were "the same type of activity" as Gear's, and complained, "(i)f your client proceeds to emerge from the narrow domain of athleisure footwear and attempts to license a wide variety of products under the name L.A. Gear, it will directly conflict with out client's rights." Marple concluded, "(i)f you do not assure us that your client will promptly abandon the course announced in *Design and Fashion Licensing,* our client will have no choice but to obtain injunctive relief."

Shortly thereafter, Musham received a letter from one C.J. McMerty, vice president of one of Gear's licensees, dated August 13, 1984. (Ex. 1 to Musham Aff.) Enclosed with the letter was a copy of an advertisement by Doe-Spun/Calabash for "L.A. Gear Kids.®" McMerty wrote,

Do you view this as an infringement on your GEAR* Kids? brand? If not an infringement, it certainly does serve to confuse the trade.

Can or will you be doing anything about this?

\* \* \* \* \* \*

*Trademark

On August 17, 1984, Marple spoke with defendants' present counsel Marshall Lerner, who had apparently succeeded Schwartzberg. (Affidavit of Marshall Ler-

ner, hereinafter "Lerner Aff." ¶ 35). That conversation was followed by a letter from Marple to Lerner dated August 23, 1984 (the "August 23 letter"). Marple wrote that "L.A. Gear must effect a change of corporate name and cease use of the word 'Gear' altogether." He explained Gear's licensing activities in general, and then objected specifically to the use of "L.A. Gear Kids," noting that Gear had been using "Gear Kids" since the previous November. He went on to say that defendants' use of "L.A. Gear Kids" "simply serves as an example of the increasing confusion that will continue to be augmented if L.A. Gear, emulating Gear, Inc. expands its licensing activities into more and more product areas without changing its name and purported marks."

Lerner wrote back on September 11, 1984. (Ex. I to Am. Complaint, herein after referred to as the "September 11 letter"). He indicated that he had undertaken to eliminate the word "Kids" from future Doe-Spun/Calabash advertisements, and had "taken the appropriate steps to have the designation of an R with a circle eliminated until we have obtained registration of the trademark L.A. Gear." Lerner then went on to assert "(m)y client's trademark L.A. Gear does not infringe any valid trademark rights of your client." Lerner concluded,

> We assume that our willingness to resolve the matter of the advertisement of Calabash resolves the only issue of any substance that you have raised. Accordingly, I am requesting that you contact me to confirm that once the advertisement has been corrected, the matter has been resolved.

There appears to have been no further contact between representatives from plaintiff and defendants before the instant lawsuit was filed on July 26, 1985. Meanwhile, Musham continued to receive occasional complaints from Gear licensees. In January, 1985 an article about defendants' licensing program appeared in a trade magazine which discussed the L.A. Gear line of footwear, children's wear, and sportswear. The article was apparently sent to Musham in late January by Richard D. Schwab,

Gear licensee in children's clothing. (Ex. 2 to Musham Aff; Musham Aff. ¶ 6). Noting that the L.A. Gear mark was being used on children's wear, he suggested that the L.A. Gear name infringed Gear's rights and asked for Musham's or her attorney's views on the issue. No response appears in the record.

In June, 1985 Musham received a letter from Donald Landry of Sears, Roebuck & Co., another Gear licensee. (Musham Aff. ¶ 7 and Ex. 3 thereto). Landry indicated that he had seen an "impressive display" of goods such as footwear, watches, and girls' clothing bearing the "L.A. Gear" name at a licensing show in New York. He wrote, "(i)t would seem that they are infringing on your good name and I wonder what your opinion might be." There is no response from Musham in the present record.

In July and August, 1985, announcements appeared in two trade journals of defendants' license to Ocean Trends for "L.A. Gear" bags, totes and towels. (Musham Aff. ¶ 8 and Ex. 4 thereto.) Musham states that the "L.A. Gear" bag was purchased and given to her by Gear's bag licensee "with a complaint of confusion and infringement." (Musham Aff. ¶ 8.)

The original complaint was filed July 26, 1985 against L.A. Ltd. L.A. Ltd's time to move or answer was extended by stipulation to October 3, 1985. L.A. Ltd. filed its motion to dismiss on jurisdictional grounds on that date. The amended complaint was filed October 18, 1985. Plaintiff filed its motion for a preliminary injunction on November 14, 1985.

Although it does not appear on the present record that Gear has lost any licensees as a result of the present trademark dispute, Musham reports that negotiations with potential Gear licensee for bags, Jaclyn, Inc., were "at a standstill." Musham asserts, "Jaclyn will not enter into an agreement until it is confident that there will not be confusion between competing products on the market, some under the GEAR mark and others designated L.A. GEAR. This applies not only to bags, but

to other products as well." (Musham Aff. ¶ 11).

The L.A. defendants, on the other hand, appear to have lost several licensees as a result of the instant dispute. Doe-Spun/Calabash, defendants' licensee for children's clothing, stopped using the L.A. Gear mark as a result of the lawsuit. (Dec. 4 Greenberg Aff. ¶ 16.) It appears that Ocean Trends, "L.A. Gear" license for bags and totes, may also have partially terminated its license. (Declaration of Charles Gilman, hereinafter Gilman Aff., ¶ 14). A potential "L.A. Gear" licensee also appears to have discontinued negotiations because of the pending litigation. (Gilman Aff. ¶ 15.)

■ In this circuit, a party seeking a preliminary injunction must establish as a threshold matter that it will suffer irreparable harm *pendente lite* if the sought-after relief is not granted. *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1978). Where plaintiffs are dilatory in seeking preliminary relief, recent cases have looked askance at their assertion that the claimed injury is irreparable. "Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay may alone justify denial of a preliminary injunction for trademark infringement," *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985) (citing *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir.1984)). *See also Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir.1985) (per curiam).

■ I have concluded that this analysis defeats Gear's claim for preliminary relief. Plaintiff's course of conduct belies its claim that any harm it is suffering from the claimed infringement is irreparable. Plaintiff learned in May, 1984 that defendants had licensed the mark "L.A. Gear" to Doe-Spun/Calabash for children's clothing. Marple wrote to defendant in June, 1984 asserting that use of "L.A. Gear" as a trade name and in corporate names infringed plaintiff's trademark rights. As a result of ensuing exchange of correspon-

dence, defendants did abandon use of "Kids" in connection with "L.A. Gear," but it could hardly have been more clear that the defendants refused to discontinue use of "L.A. Gear" as a trademark and in their corporate names, despite plaintiff's specific demand that they do so. Both Schwartzberg's June 19th letter and Lerner's September 11th letter disputed plaintiff's claims of infringement. Indeed, Lerner's September 11th letter indicated that defendants intended to pursue registration of the "L.A. Gear" mark. The battle lines were drawn by the summer of 1984; yet plaintiff did not even file suit until the following July, and did not seek preliminary relief until three and one-half months later.

Plaintiff argues that it had thought the issues resolved after defendants agreed to stop using "L.A. Gear Kids," but that it was only in the spring of 1985 that plaintiff became aware of the extent of defendants' licensing activities and their overlap with Gear's products—particularly, bags. (Transcript of Oral Argument at 19–24.) But Marple's first letter to Greenberg, on June 13, 1984, did not even refer to "L.A. Gear Kids," it demanded that defendants cease using "L.A. Gear" altogether. In July 1984 Musham saw an article describing Greenberg's plans for expanding defendants' licensing activities and Marple thereupon wrote to Schwartzberg complaining of those plans. Yet both letters from defendants' counsel made clear that defendants intended to continue its use of "L.A. Gear" and disputed plaintiff's claim of infringement.

Moreover, although plaintiff agreed by letter to stop using "L.A. Gear Kids," it did not agree to discontinue use of "L.A. Gear" on children's clothing—a product line directly competitive with a Gear line. Plaintiff was reminded of this direct competition in children's clothing by a Gear licensee in January, 1985. Plaintiff does not appear to have taken any action until six months later, after learning that defendants had expanded into bags and other accessories. In these circumstances, defendants' continued expansion into new activities cannot be

considered a qualitative change. Plaintiff was on notice a year before it filed suit and more than a year before seeking preliminary relief that defendants intended to continue to use "L.A. Gear" on various product lines, including one directly competitive with a "Gear" line; that defendants were seeking to register the "L.A. Gear" mark; and that defendants denied plaintiff's claim of infringement. It is too late in the day for plaintiff now to claim irreparable injury.

I appreciate that plaintiff has offered some proof of injury. Musham reports that negotiations with a potential licensee are "at a standstill." Plaintiff also offers several letters from licensees concerned about "L.A. Gear," one of which specifically opined that defendants' use of "L.A. Gear Kids" would "confuse the trade." Defendants, of course, have discontinued use of "L.A. Gear Kids." Furthermore, it is not at all clear that the claimed interference with license negotiations with Jaclyn, Inc. would not be compensable in money damages. But more fundamentally, I believe that plaintiff's long period of inaction, after defendants indicated their full intention to continue using "L.A. Gear," undermines its contention that the claimed injuries are irreparable.

Since plaintiff has failed to establish irreparable harm, its motion for a preliminary injunction must be denied.[9]

### IV. *The Cross-Motion For Summary Judgement*

 Civil Rule 3(g) of Rules of the United States District Courts for the Southern and Eastern Districts of New York requires that any motion for summary judgment be accompanied by a "separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Failure to comply with this requirement is grounds for denial of the motion.

Neither plaintiff nor defendants have complied with Rule 3(g). Accordingly, both cross-motions are denied. The parties may renew their motions, if so advised, by submitting the statements required by Rule 3(g), to which the party opposing the motion must respond. Further memoranda or affidavits may be required, depending on the extent to which the Rule 3(g) practice narrows the issues.

### Conclusion

Defendants' motion to dismiss for insufficient service of process is denied. Defendants shall pay plaintiff the costs of serving the amended complaint.

L.A. Ltd's motion to dismiss for lack of *in personam* jurisdiction is denied, without prejudice to renewal after discovery.

Plaintiff's motion for a preliminary injunction is denied.

The cross-motions for summary judgment are denied.

It is SO ORDERED.

---

9. In so holding, I intimate no views or any possible laches defense against permanent relief. *See Majorica, supra,* 762 F.2d at 8; *Citibank, supra,* 756 F.2d at 276–77. *Cf. Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 535 (2d Cir.1964), per Friendly, J. (trademark "owner's delay in asserting his rights may lead the defendant to build up innocently an important reliance on the publicity of his mark, so that its loss would cost dearly").