**BOURNE CO., Plaintiff–Appellee,**

v.

**TOWER RECORDS, INC., Barnes & Noble Bookstores Inc., Record Explosion, Inc., Blockbuster Entertainment Corp., RKO Warner Video, Inc., Does #1–#100, Defendants,**

**The Walt Disney Company and Buena Vista Home Video, Defendants–Appellants.**

**No. 2143, Docket 92–7701.**

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1992.
Decided Sept. 29, 1992.

**100**

Sanford M. Litvack, The Walt Disney Co. (Peter Herbert, Richard S. Mandel, Alasdair J. McMullan, Cowan, Liebowitz & Latman, New York City, of counsel), for defendants-appellants.

Jay Gordon, New York City (Janet P. Kane, Theodore C. Max, Robert N. Fass, Shelley Moroff, Phillips, Nizer, Benjamin, Krim & Ballon, of counsel), for plaintiff-appellee.

Before WINTER, MINER and McLAUGHLIN, Circuit Judges.

WINTER, Circuit Judge.

Walt Disney Company ("Disney") and Buena Vista Home Video appeal from a preliminary injunction issued by Judge Stanton, barring their use of songs from the movie "Pinocchio" ("the songs") on videocassette trailer advertisements. Because the district court gave insufficient weight to Bourne Co.'s delay in seeking relief and mistakenly considered the challenged use "new", we reverse.

In 1939, Disney entered into an agreement with Bourne, in which it assigned to Bourne copyrights to the songs from the movie "Pinocchio", including the famous "When You Wish Upon A Star" ("Wish Upon A Star"). The parties disagree about the effect of this agreement. Disney claims the agreement gave Bourne only the right to collect licensing fees from third parties and to keep fifty percent of the fees received, leaving Disney free to use the songs for its own purposes. Bourne claims that Disney ceded all rights to the songs, except for the right to employ them in public performances of motion pictures.

Whatever the meaning of the contract, Disney exercised for decades its claimed rights without protest by Bourne. Beginning in 1954, Wish Upon A Star opened and closed Disney's weekly television series. Both Wish Upon A Star and the series were used to promote Disneyland. In addition, Disney's national advertising campaign featured Wish Upon A Star. Disney's uses of the songs kept pace with technological development. When home movie projectors became popular, the songs accompanied reel-to-reel movies sold solely for home use. When video-technology developed, Disney employed the new technology in distributing the movie "Pinocchio" for home viewing in at least twenty-three countries. It has also used the songs on a wide variety of videocassettes. In sum, the songs have been used for decades in a wide variety of media in ways that are inconsistent with Bourne's view of its agreement with Disney.

After decades of Disney's use of the songs for purposes other than the public performances of motion pictures, Bourne first objected in 1981. Disney rejected Bourne's claims. Bourne was silent until 1986 when it objected again. Disney again rejected Bourne's claims. Finally, in January 1991, Bourne commenced the instant action. Subsequently, Euro Disney S.A.

("EDSA") (a Disney subsidiary that manages Euro Disney) requested licenses from Bourne, intending to promote Euro Disney with Wish Upon A Star. One of the proposed promotions was a videocassette advertising trailer using Wish Upon A Star. Disney claims that the requests were a mistake and that it continued to negotiate for the licenses solely to avoid litigation that might interfere with the scheduled opening of Euro Disney. Eventually, EDSA withdrew its request but agreed to obtain licenses for the other proposed promotions. These events evidently prompted Bourne to seek the preliminary injunction barring the use of Wish Upon A Star and the songs on videocassette advertisements that is the subject of this appeal.

Judge Stanton granted Bourne's request, ruling that videocassette trailers were a new use of the songs to which Bourne had promptly objected. In his view, this prompt objection established a presumption of irreparable harm for the new infringement. This appeal followed.

■ As the district court noted:

[A] preliminary injunction may be granted only upon a showing of "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting [the preliminary] relief."

*Bourne v. The Walt Disney Company,* 1992 WL 170686, at *2, 1992 U.S.Dist. LEXIS 9853, at *6 (S.D.N.Y. July 1, 1992) (quoting *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985)). Bourne has failed as a matter of law to demonstrate irreparable harm. This is a case in which the actions of the parties speak louder than the after-the-fact arguments of their lawyers. The best evidence of the lack of urgency in Bourne's need for preliminary relief is its own course of conduct in failing to object for several decades to pervasive violations of what it now claims are its contractual rights. Faced with this record of inaction, we will not now presume that Disney's present actions

threaten severe, much less irreparable, harm.

To be sure, irreparable harm is presumed when plaintiff establishes a *prima facie* case of copyright infringement. *See, e.g., Video Trip Corp. v. Lightning Video, Inc.,* 866 F.2d 50, 51–52 (2d Cir.1989). However, it is equally settled that a party's delay in the enforcement of copyrights rebuts that presumption. For example, in *Citibank, N.A. v. Citytrust,* 756 F.2d 273 (2d Cir. 1985), we held that the presumption of irreparable harm did not survive even a ten-week delay from discovery of the claimed infringement to commencement of the lawsuit. Citibank waited "more than ten weeks after it learned directly of Citytrust's plans" to expand into Long Island before seeking an injunction. *Id.* at 276. We held that "Citibank's failure to act sooner 'undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Id.* at 277 (quoting *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 609 (S.D.N.Y.1979)). Bourne has delayed for decades, and any presumption of irreparable harm clearly perished long ago.

The district court granted preliminary relief on the grounds that videocassette trailers are a new use and that Bourne's prompt objection to such a new use revived the presumption of irreparable harm that normally accompanies a claim of copyright infringement. We disagree.

*Citibank* involved Citibank's objection to a new Citytrust branch office that would handle only commercial loans. The prior use that we held to be a rebuttal of the presumption of irreparable harm was neither a branch office nor specifically related to commercial loans. We thus stated:

Any sense of urgency is further undercut by additional facts. Long before this dispute over its Long Island branch had arisen, Citytrust had advertised its services in the New York media, apparently, as Citibank asserts in its appellate brief, as early as 1980. Citytrust placed ads in the *New York Times* in October 1982 advertising its "insured money market

plus account." Similarly, Citytrust apparently advertised on New York City radio stations in either 1982 or 1983. *Id.* Acquiescence to radio and newspaper advertisements rebutted any presumption that the opening of a branch office caused irreparable harm. *Citibank* thus held that prior acquiescence in the use of an allegedly infringing name to advertise banking services generally belies a claim of irreparable harm arising from the use of that name to solicit the specific business of commercial loans. Properly understood, *Citibank* holds only that acquiescence in an infringement rebuts the presumption of irreparable harm where the allegedly "new" use does not inflict harm qualitatively different from the harm flowing from the prior infringement.

We also agree with, and adopt, the holding of *Gear, Inc. v. L.A. Gear California, Inc.*, 637 F.Supp. 1323 (S.D.N.Y.1986). The plaintiff in *Gear* was on notice that the defendants were aggressively marketing and developing a range of products that could, and at times did, infringe on plaintiff's trademarks. When defendants began a new infringing use, plaintiff sought a preliminary injunction. Judge Haight denied the request, ruling that:

> In these circumstances, defendants' continued expansion into new activities cannot be considered a qualitative change. Plaintiff was on notice a year before it filed suit and more than a year before seeking preliminary relief that defendants intended to continue to use "L.A. Gear" on various product lines, including one directly competitive with a "Gear" line; that defendants were seeking to register the "L.A. Gear" mark; and that defendants denied plaintiff's claim of infringement. It is too late in the day for plaintiff now to claim irreparable injury.

*Id.* at 1332–33.

The facts of *Gear* are similar to, but less egregious than, the instant case. Disney has used the songs, including Wish Upon A Star, to advertise or accompany its products for decades. The harm caused by this use is qualitatively similar—often identical—to the harm alleged in Bourne's complaint. Disney's conduct over the decades clearly signaled its intentions to use the songs for a multitude of purposes and in new media forms as technology developed. Whatever presumption Bourne might have enjoyed over a generation ago is long gone.

We need not address the precise circumstances in which a truly new use of a name or song will revive the presumption of irreparable harm. We do note, however, that the perceived harm from the new use must be so qualitatively different from the harm flowing from the prior uncontested use that the injured party could not reasonably foresee the new harm. Where the quality of the new harm is not foreseeable, the injured party's earlier forebearance does not support an inference that it perceived no injury worthy of legal action. However, where the prior harm reasonably alerts the injured party to the infringer's future intentions, the injured party must act or cannot expect to obtain preliminary relief when it later brings suit. The use of Wish Upon A Star to advertise Euro Disney on videocassettes neither caused a qualitatively different harm nor was unforeseeable. Bourne has thus failed to establish irreparable injury and is not entitled to an injunction.

We therefore reverse.