Robert J. FRITZ, DMA, Inc., and Technologies for Creating, Inc., Plaintiffs,

v.

ARTHUR D. LITTLE, INC., Charles F. Kiefer, Jr., Innovation Associates, Inc., and, Innovation Associates, Inc., Defendants.

Civil Action No. 96–10607–NG.

United States District Court, D. Massachusetts.

Nov. 6, 1996.

**96**

Christopher P. Paolillo, Shane & Paolillo, Newton, MA, for Robert J. Fritz, DMA, Inc., Technologies for Creating, Inc.

Michael Arthur Walsh, Robert S. Frank, Jr., Choate, Hall & Stewart, Boston, MA, for Arthur D. Little, Inc., Innovation Associates, Inc., ADL/Innovation, IA, Inc.

Robert S. Frank, Jr., Choate, Hall & Stewart, Boston, MA, for Charles F. Kiefer, Jr.

### MEMORANDUM AND ORDER

GERTNER, District Judge:

This case concerns the tangled web of copyrights, trademarks, licenses and understandings between former partners in the "Leadership Training" field. Plaintiffs Robert Fritz and his wholly-owned companies Dimensional Mind Approach ("DMA") and Technologies For Creating ("TFC") (hereinafter collectively "Fritz") claim that defendants Arthur Little, Inc., Charles Kiefer, Jr., Innovation Associates, Inc. I ("IA Inc I") and its successor Innovation Associates, Inc. II ("IA Inc. II"), have infringed several of plaintiffs' copyrights and plaintiffs' protectable trade dress. Fritz further claims that defendants have engaged in statutory and common law unfair competition, and that they have breached licensing agreements and implied covenants of good faith and fair dealing.

Fritz now seeks a preliminary injunction to stop defendants from using the allegedly infringing materials. Defendants move to dismiss the trade dress claims in Count Three of plaintiffs' complaint. Both motions are **DENIED,** as set forth below.

### I. BACKGROUND

Robert Fritz and Charles Kiefer first met in 1976. Both were engaged in the preparation and teaching of courses that focused on personal enhancement, and the enhancement of team performance. Fritz was the sole proprietor of Dimensional Mind Approach, Inc., through which he taught the DMA Course, while Kiefer was the sole proprietor of Innovation Associates, ("IA Inc. I") through which he taught the "Core Course." The two men became friends, and each attended the other's course. Starting in 1978–79, they collaborated in developing a comprehensive course in leadership training called the "Leadership and Mastery" course (under the auspices of Innovation Associates).

Kiefer paid Fritz, as a subcontractor, to teach the Leadership and Mastery course. In 1979, Kiefer purchased parts of Fritz's DMA course to use in his Core Course. Kiefer did not buy the right to use the entire DMA course, but only certain clearly specified portions of it.

In a letter dated November 3, 1980 (hereinafter "letter-agreement"), Fritz became Kiefer's partner in Innovation Associates. As part of their agreement, Innovation Associates agreed to pay Fritz royalties for a limited time for the use of DMA course materials. Fritz retained the right to decide how his own future innovations would be used. In the crucial paragraph of the November 3, 1980 letter-agreement, all of Fritz's future contributions to Innovation Associates, unless "specifically exempted in advance," were to be "free and clear of obligation" to DMA. In December, 1982, Innovation Associates incorporated (hereinafter "IA Inc. I"). Fritz made some contributions to IA Inc. I's Leadership and Mastery course while teaching it, contributions which may have been entirely oral. There is no indication that these contributions were expressly exempted by Fritz under the November 3, 1980 letter-agreement.

On numerous occasions, Kiefer wrote updated versions of the Leadership and Mastery course incorporating Fritz's oral contributions. Meanwhile, around 1981, Fritz began revising his own DMA course around the central theme of "Structural Tension";

Fritz began to teach Structural Tension through DMA, Inc. These "ST" courses were owned by DMA and taught by a number of DMA instructors. Fritz claims he granted oral and non-exclusive licenses to IA Inc. I to use material contained in the ST courses. Kiefer denies this.

When IA incorporated in December 1982, Fritz became a stockholder of IA Inc. I, and as such, continued to teach its Leadership and Mastery course. Fritz also continued developing his own ST courses, including one course called the Genesys course ("Genesys"), the use of which Fritz claims he licensed to IA Inc. I.

In the early 1980's, IA Inc. I created the Visionary Leadership course ("VL") and the Visionary Business Planning course ("VP"). Both of these courses used Fritz's materials, drawn from the Leadership and Mastery course on which Kiefer and Fritz had collaborated. In 1985, the VL and VP courses were combined to create the Visionary Leadership and Planning course ("VLP"). Some of the material was drawn from Fritz's material, either pursuant to the November 3, 1980 licensing arrangement contained in the letter-agreement, the various oral licenses, or other agreements between Fritz and IA Inc. I (or Innovation Associates, the partnership). The VLP course does not explicitly acknowledge that it contains the copyrighted work of Robert Fritz, whereas the Leadership and Mastery and the VL course manuals (noting on their covers that some material is copyrighted by Robert Fritz and is used with permission).

On July 2, 1991 IA Inc. I redeemed all of Fritz's shares for $30,000 and other valuable consideration. In 1992, Fritz granted IA Inc. I permission to use some of his Technologies For Creating ("TFC") materials, as IA Inc. I was considering purchasing them. This licensing arrangement was terminated on July 20, 1994, when IA Inc. I decided not to purchase these materials.

In August, 1995 IA Inc. I was acquired by a subsidiary of Arthur D. Little, Inc. ("ADL"), the ADL Acquisition Corp. The merger resulted in a new company, a subsidiary of ADL also called Innovation Associates Inc. ("IA Inc. II"). IA Inc. II continues to perform the same business as its predecessor, IA Inc. I.

On March 21, 1996, Fritz brought suit against the defendants, alleging copyright and trade dress infringement, unfair competition, breaches of contract and implied covenants of good faith. Plaintiffs have moved for a preliminary injunction to stop defendants from using allegedly infringing material. Defendants move to dismiss Count III, in which Fritz claims trade dress infringement and unfair competition by defendants.

## II. DISCUSSION OF PRELIMINARY INJUNCTION

### A. Preliminary Injunction Standard

The traditional standard for preliminary injunctions requires the Court to consider and balance the following four factors: 1) whether the plaintiffs have exhibited a likelihood of success on the merits; 2) whether the plaintiffs risk suffering irreparable injury if the injunction is not granted; 3) whether the public interest will be adversely affected by the granting of the injunction; and 4) in light of the plaintiff's likelihood of success on the merits, whether the injury complained of by the plaintiff outweighs any harm which granting the injunction would inflict on the defendants. See *Concrete Machinery Co. v. Classic Lawn Ornaments*, 843 F.2d 600, 611 (1st Cir.1988).

#### 1. Public Interest

In copyright and trademark cases, the public interest almost always favors the granting of otherwise appropriate injunctions. *Id.* at 612; see *Calamari Fisheries, Inc. v. The Village Catch*, 698 F.Supp. 994, 1015 (D.Mass.1988).

#### 2. Potential Harm to Defendants from Injunction

Harm to the defendant flowing from an injunction where infringement appears likely is entitled to less consideration than other harms. *Concrete Machinery Co.*, 843 F.2d at 612–13. The Court is to consider the potential legitimate harm to the defendants owing to the injunction as balanced against the degree of plaintiff's likelihood of

success on the merits. *See Accusoft Corp. v. Palo,* 923 F.Supp. 290, 295 (D.Mass.1996).

### 3. *Irreparable Harm/Delay*

■ If the plaintiffs can show a likelihood of success on the merits, "irreparable harm is usually presumed...." *Concrete Machinery Co.,* 843 F.2d at 611. An exception exists when plaintiffs are aware (or have reason to be aware) of the infringement, and do not bring suit; traditionally, plaintiffs' delay in filing suit rebuts the presumption of irreparable harm to them, making preliminary injunctive relief inappropriate. *See Bourne Co. v. Tower Records, Inc.,* 976 F.2d 99, 101 (2d Cir.1992).

■ Assuming, *arguendo,* that the plaintiffs were to convince me that they are likely to succeed on the merits of their infringement actions, they would be entitled to a presumption of irreparable harm, even without providing proof thereof. *See Concrete Machinery Co.,* 843 F.2d at 611–12. Here, however, that presumption is rebutted by plaintiffs' unexplained delay of more than two years in commencing this action.

"It has been held that an unreasonable delay between the time when a plaintiff is first apprised of the infringing acts and the time of filing suit will rebut the presumption of irreparable harm." *Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 267 (6th Cir.1988). Similarly: "Unwarranted delay in seeking a preliminary injunction ... undercuts the movant's claim of irreparable injury." *Fabrication Enterprises, Inc. v. Hygenic Corp.,* 64 F.3d 53, 61 (2d Cir.1995); *see Bourne Co.,* 976 F.2d at 101.

The plaintiffs' Complaint alleges that the copyright infringement commenced in 1993 (¶¶ 16, 22). Fritz also states in his Affidavit that between 1992 and 1994 he "maintained a supervisory role in the operation of the [defendants'] courses in the same manner I watched over the use of my materials in the Leadership and Mastery course and the Visionary Leadership course." Fritz should have been aware of any infringement by IA Inc. I of his copyrights in these materials commencing in 1993; he did not bring this infringement action until 1996. This significant and unexplained delay rebuts the presumption that irreparable harm was suffered by plaintiffs as a result of defendants' alleged infringements.

The Second Circuit has said:

The cases in which we have found that a delay rebutted the presumption of irreparable harm are trademark and copyright cases in which the fair inference was drawn that the owner of the mark or right had concluded that there was no infringement but later brought an action because of the strength of commercial competition. In these cases, it appeared that the trademark or copyright owners were well aware of their rights and had concluded that they were not violated.

*Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 39 (2d Cir.1995) (citations omitted).

In the present action, Fritz claims harm due to the increased competition, since he does "not have a budget to compete effectively against a giant corporation." Fritz Affidavit, at ¶ 24. Fritz's Affidavit continuously refers to and makes clear that he was aware of his copyrights and what he alleges they covered, and what the defendants were or were not doing. Infringement, if actionable, is infringement, be it by a "giant corporation" such as defendant ADL, or by a smaller company such as IA Inc. I. More harm is not necessarily any more irreparable, so long as it is not qualitatively different. *See Bourne Co.,* 976 F.2d at 102 ("acquiescence in an infringement rebuts the presumption of irreparable harm where the allegedly 'new' use does not inflict harm *qualitatively different* from the harm flowing from the prior infringement" (emphasis added)).

There is no evidence that between 1993 and 1995 the content of the allegedly infringing courses, the Leadership and Mastery course and the VLP course, changed significantly.[1] As Fritz alleges in his Affidavit, "ADL/Innovation [IA Inc. II] then proceeded to use my materials in the very same manner

---

1. Indeed, the allegedly infringing materials, the Visionary Leadership and Planning course materials attached as exhibits to the Complaint and to Fritz's Affidavit, are all dated 1993.

as Defendant IA, Inc. [IA Inc. I] and has, with the assistance of Defendant Arthur D. Little, Inc. threatened to use my materials more extensively."

Plaintiffs' unexplained delay of at least two years in bringing this infringement action rebuts the usual presumption of irreparable harm. Given the uncertain likelihood of success on the merits discussed below, a preliminary injunction is inappropriate.

4. ***Likelihood of Success on the Merits***

To succeed on the merits of a copyright infringement claim, plaintiffs must show (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer. *Concrete Machinery Co.,* 843 F.2d at 605.

B. ***Copyright Infringement***

[redacted] Plaintiffs have registered numerous copyrights covering course materials from 1980 to 1988. They have thus satisfied the requirements of 17 U.S.C. § 410(c) that the registration be made within five years after the first publication. The certificates constitute prima facie evidence of the validity of these copyrights.[2] 17 U.S.C. § 410(c). For the purposes of this motion, I will assume plaintiffs are the owners of several valid copyrights.[3] *See Lotus Dev. Corp. v. Borland Intern., Inc.,* 49 F.3d 807, 813 (1st Cir.1995) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991)). Plaintiffs have therefore demonstrated a substantial likelihood that they will satisfy the first prong of their copyright infringement claims.

Plaintiffs have not, however, convinced me that they are substantially likely to succeed on the second prong of their copyright infringement claim: that defendants wrongfully copied constituent elements of a work that are original. *See Lotus,* 49 F.3d at 813. "To show actionable copying ... a plaintiff must first prove that the alleged infringer copied plaintiff's copyrighted works as a factual matter; to do this, he or she may either present direct evidence of factual copying or, if that is unavailable, evidence that the alleged infringer had access to the copyrighted work and that the offending and copyrighted works are so similar that the court may infer that there was factual copying (i.e., probative similarity)." *Id.*

To some degree, the record reflects some factual copying. In this case, however, some or all of the factual copying may have been permissible, owing to a license between Fritz and IA Inc. I, or to the doctrine of "independent creation." *See Grubb v. KMS Patriots, L.P.,* 88 F.3d 1, 4 (1st Cir.1996).

There is significant controversy about how, exactly, Fritz's allegedly infringed materials came to be in IA Inc. I's course materials. Defendant does not deny having access to plaintiffs' work. The probative similarity doctrine, *see Lotus,* 49 F.3d at 813, as applied to the circumstances of this case, may not apply since Kiefer's work may be deemed "independent creation." *See Grubb,* 88 F.3d at 4; *Concrete Machinery Co.,* 843 F.2d at 605 n. 6.

If Fritz came up with new course material extemporaneously—delivered orally while teaching—and Kiefer took notes thereon and then included them in IA Inc. I's course materials, this in itself would not amount to actionable copying. *See 17 U.S.C. § 102(a).* According to the "independent creation" doctrine, Kiefer's use of Fritz's oral "creations" would not constitute infringement. Kiefer's notes would be independent creations based on a non-copyrighted source. *See Grubb,* 88 F.3d at 4; *Concrete Machinery Co.,* 843 F.2d at 605 n. 6. In contrast, if Fritz proceeded to set his new ideas down on paper, only then satisfying the fixity requirement of the copyright statute, 17 U.S.C. § 102(a), he could have a valid copyright in these written expressions.

2. "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C.A. § 410(c). Fritz's certificates of registration for the materials he claims were infringed all seem to have been made within this statutory period..

3. Defendants challenge the copyrightability of certain aspects of the plaintiffs' materials. I will not address this contention here.

Fritz's work might indeed look probatively similar to the IA Inc. I course materials that contained Kiefer's notes of Fritz's oral presentation; and Fritz could prove Kiefer had access to his copyrighted work. Under one set of facts, all this would mean is that *both* would have valid, *independent* copyrights in their work (the course materials).

As Learned Hand wrote in one of his oft-cited landmark copyright opinions: "if by some magic a man who had never known it were to compose anew Keats's Ode on a Grecian Urn, he would be an 'author,' and, if he copyrighted it, others might not copy that poem, though they might of course copy Keats's. *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 249, 23 S.Ct. 298, 299, 47 L.Ed. 460 (1903).... [J]ust as [one] is no less an 'author' because others have preceded him, so another who follows him, is not a tort-feasor unless he pirates his work." *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.1936). Or as Justice Holmes put is succinctly in *Bleistein*: "Others are free to copy the original. They are not free to copy the copy." 188 U.S. at 249, 23 S.Ct. at 299.

In the case before me, Fritz's extemporaneously spoken words might constitute "the original" (the equivalent of Keats's Ode) which the defendants may have been free to include in their course materials. Fritz's subsequently created course materials are protected against copying, but not extemporaneously spoken words upon which they were based.

Defendant Kiefer claims that the complained of material was presented orally in courses taught by Mr. Fritz as a partner of IA Inc. I, pursuant to the letter-agreement of November 3, 1980. *See* Kiefer Affidavit. Kiefer also claims to have been present at these courses while Mr. Fritz was teaching, and to have taken copious notes. If true,

this claim that the source of the allegedly infringing materials was not "fixed in any tangible medium of expression" when copied would defeat Fritz's claim of copyright infringement. *See* 17 U.S.C. § 102(a). "Original" words spoken aloud can be copied (and independently copyrighted) by all, if they have not previously been fixed in a tangible medium of expression. *See id.; Bleistein*, 188 U.S. at 249, 23 S.Ct. at 299.

Furthermore, the plaintiffs have not shown a substantial likelihood of succeeding on their claim that the allegedly infringing material in defendants' courses belongs exclusively to Fritz, given that much of the work may have been developed as a collaboration between Fritz and the other IA Inc. I instructors and partners, especially Kiefer. Both Fritz and Kiefer appear to be authors of copyrighted works, and the extent to which Kiefer's work infringes Fritz's, if it does so at all, is, on this record, entirely unclear.

While Fritz may own valid copyrights, it does not seem substantially likely that these copyrights were infringed by the defendants (who may also own valid copyrights in the same, or similar, works). The November 3, 1980 letter-agreement between Fritz and Kiefer provides in relevant part: "From this point on we will consider all of Bob's contributions to IA, *unless specifically exempted in advance,* as free and clear of obligation to DMA." · (emphasis in original) If the allegedly infringing material consists of contributions by Fritz (Bob) to IA, and these were not specifically exempted by him in advance, then they may belong to IA Inc. I (or its successor).[4] There is no evidence that Fritz specifically exempted his oral "innovations" developed in the course of his teaching the Leadership and Mastery course for IA Inc. I. Thus, the defendants' use of what may appear to be Fritz's work, on closer inspection might not be infringement at all.[5]

---

4. I need not decide what the meaning of this contract language is *qua* copyright for the purpose of determining the appropriateness of preliminary injunctive relief. Suffice it to say that the letter-agreement may be open to different interpretations. Furthermore, ambiguity as to the extent of contract coverage *vel non* provided to Fritz by this letter-agreement weighs against my granting a preliminary injunction based on any actual or implied breach of contract theory.

5. Plaintiffs claim that even if IA Inc. I was licensed to use its copyrighted materials, the merger of IA Inc. I into ADL Acquisition Corp. extinguishes this license. That depends. It is not clear whether the agreement between Fritz and Kiefer entered into on November 3, 1980 creates a license or a transfer.

Assuming the original arrangement between Fritz and IA was a license, and not a transfer of

While there may be substantial similarities between the various course materials, there is not a strong likelihood that plaintiffs will succeed on the merits of their copyright infringement claims. Defendants may have their own independent copyrights, thereby preventing a finding of copyright infringement.

## C. Trade Dress Infringement

To succeed on the merits of a trade dress claim under the Lanham Act, § 43(a), the plaintiffs will need to show (1) that its trade dress taken as a whole is inherently distinctive or has acquired a secondary meaning, and (2) that there is a likelihood that prospective purchasers will be confused as to the source of the plaintiffs' courses. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769, 112 S.Ct. 2753, 2757–58, 120 L.Ed.2d 615 (1992); *TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir.1996).

■ A third factor that district courts should also consider in ruling on preliminary injunctions in trade dress cases is called "functionality." *Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757–58; *TEC Engineering*, 82 F.3d at 546 n. 3. Functional features are not protectable under the Lanham Act. *See id.* For Fritz's trade dress claim, functionality is the critical and deciding factor. While I do not hold as a matter of law that plaintiffs' trade dress is functional,[6] at this point I cannot conclude that plaintiffs are likely to succeed in demonstrating that their claimed trade dress is non-functional.

A "product feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 2187 n. 10, 72 L.Ed.2d 606 (1982). On the other hand, a product feature will be considered non-functional if it is merely an "arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality, and, hence, unrelated to basic consumer demands in connection with the product...." *Truck Equipment Service Co. v. Fruehauf Corp.*, 536 F.2d 1210, 1217 (8th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

The product features that plaintiffs rely on in claiming protectable trade dress are the "buzz words" and overall appearance of their courses. These buzz words, the concepts of the courses, and the expressions in which they are embodied seem by no means arbitrary. *See id.* Nor am I of the opinion that they were primarily adopted for purposes of identification. *See id.* It is also unclear how they could serve to identify the source of the courses. Instead, they are the very substance of the courses themselves, "essential to the use or purpose" of the courses, and directly affecting the "quality" thereof. *See Inwood Labs., Inc.*, 456 U.S. at 850 n. 10, 102

---

his copyright interests, it may be that this license could not have been transferred by IA Inc. I to IA Inc. II. While the general rule seems to be that a copyright license is not transferable without express permission, *see Harris v. Emus Records Corp.*, 734 F.2d 1329, 1334 (9th Cir.1984) (citing cases), this appears to be a question of first impression in this circuit. The Sixth Circuit has held that a patent licensing agreement passes by transfer, even in the case of a merger or continuation. *See PPG Industries, Inc. v. Guardian Industries Corp.*, 597 F.2d 1090, 1096 (6th Cir. 1979).

The continuation doctrine, however, while usually relevant to the transfer of liabilities, suggests that if IA Inc. II is a continuation of IA Inc. I, then there may be no legal transfer of the license when transfer "results from a transformation of the legal form of the assignee. In other words, where there has been a continuation, the argument that the patent license is not assignable is inapplicable." *Syenergy Methods, Inc. v. Kelly Energy Systems, Inc.*, 695 F.Supp. 1362, 1366 (D.R.I.1988).

Presently, I only note this issue, and do not decide whether the November 3, 1980 letter-agreement between Fritz and Kiefer created a license or an assignment. Further, I do not decide that if the agreement created a license, that license was not transferable in the present situation involving what appears to be a merger and subsequent continuation of IA Inc. I after purchase by ADL Acquisition Corp.; nor do I decide that there was such a continuation between IA Inc. I and its successor, IA Inc. II (ADL Acquisition Corp. having changed its name to Innovation Associates Inc. after the purchase of IA Inc. I).

6. *But see Chrysler Corp. v. Silva*, 892 F.Supp. 321, 323 (D.Mass.1995) (finding non-functionality as a matter of law).

S.Ct. at 2187 n. 10. As such, there is a substantial likelihood that the plaintiffs will not prevail on their trade dress claims.[7]

Since plaintiffs have not demonstrated a likelihood of success on their copyright and trade dress infringement claims, their motion for a preliminary injunction is hereby **DENIED.**

### III. DEFENDANTS' MOTION TO DISMISS TRADE DRESS CLAIMS

To prevail against a motion to dismiss, plaintiffs must demonstrate that they have "set forth in [their] complaint factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory." *Roth v. U.S.*, 952 F.2d 611, 613 (1st Cir.1991) (internal quotation marks and citation omitted). Plaintiffs have cleared this hurdle, even though they have not persuaded me they are likely to succeed on the merits of their trade dress infringement claim.

There is a difference in the plaintiffs' burden between a motion to dismiss and a motion for preliminary injunction. On a motion for preliminary injunction I am obliged to evaluate the evidence as presented to determine likelihood of success on the merits. In considering a motion to dismiss, however, I must take facts alleged in the complaint as true, and "draw all inferences reasonably extractable from the pleaded facts in the manner most congenial to the plaintiff's theory." *Id.*

Defendants have two basic arguments in support of their motion to dismiss: the first is that plaintiffs have failed to plead with specificity the aspects of their product and services which they claim are protectable trade dress. The defendants second argument in support of their motion to dismiss is that whatever the claimed trade dress might be, it is functional and therefore unprotectable as trade dress.

Trade dress consists of a product's "total image." *See e.g. Paddington Corp. v. Attiki Importers & Distribs.*, 996 F.2d 577, 582 (2d Cir.1993); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 842 (9th Cir.1987).

As far as specificity of the complaint is concerned, several Courts of Appeals have observed that "courts have adopted expansive definitions of trade dress ..." *Fuddruckers*, 826 F.2d at 843 (citing cases). Trade dress can encompass the total image, and it "may include features such as size, shape, color, or color combination, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir.1983); *see TEC Engineering Corp. v. Budget Molders Supply, Inc.*, 927 F.Supp. 528, 533 (D.Mass.1996).

As for functionality, as noted above, that which is functional cannot be considered trade dress. *See Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757–58. Courts have consistently held that "[f]unctionality is a question of fact." *See Fuddruckers*, 826 F.2d at 843 (citing cases); *see also Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.*, 644 F.2d 769, 776 (2d Cir.1981) ("issue of functionality has been consistently treated as a question of fact"). Thus, "claims under Section 43(a) of the Lanham Act cannot be dismissed on the grounds that the ... trade dress is functional." *Morton v. Rank America, Inc.*, 812 F.Supp. 1062, 1069 (C.D.Cal.1993); *Naso v. Park*, 850 F.Supp. 264, 270 (S.D.N.Y.1994).

Plaintiffs have satisfied their minimal burden by alleging facts which, if true, would show that their course materials contain (or are contained in) protectable trade dress, and that this has been infringed by the defendants.

Defendants' motion to dismiss Count Three is therefore **DENIED.**

**SO ORDERED.**

---

7. This likelihood does not require the dismissal of the trade dress claims at this stage. *See infra.*