BIRCH, Circuit Judge,
specially concurring:
I concur. Moreover, because the confluence of facts in this case present a “perfect storm,” I think it enticing, if not necessary, to address an alternative basis upon which the district court’s judgment could be sustained — unreasonable delay. Whether unreasonable delay may bar a claim of copyright infringement[1] where there is considerable delay in filing suit and a bona fide claim of independent creation exists is globally one of first impression and merits examination. I am persuaded that just as equitable tolling[2] may save an otherwise tardy infringement action, unreasonable delay should bar such an action where a bona fide independent creation claim is presented.[3]
I conclude that the challenging author must not unreasonably 'delay in his assertion of copyright as to the other author’s *1236 work where he seeks to have a judicial determination of the challenged author’s originality of creation.[4] Failing to do so would constitute a manifest injustice and potentially unjust denial of the challenged author’s constitutionally guaranteed copyright in his original (albeit later) work. The gravamen of Calhoun’s lawsuit is that he claims ownership in “Emmanuel” because he contends the melodies are practically identical. I conclude that this claim and all those logically following therefrom should be barred, including any infringement claims. Such an approach is not without precedent or logic.[5]
1. Period of Delay
The statute of limitations for copyright infringement claims is triggered by violations, that is, actual infringements. The limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement. 17 U.S.C. § 507(b). One should look to the appropriate statute of limitations as a guide to determine whether the delay was reasonable. Kason Indus., Inc., 120 F.3d at 1203. The Copyright Act sets forth a three-year statute of limitations for claims of copyright infringement. 17 U.S.C. § 507(b). Accordingly, one basis for determining whether Calhoun’s delay in filing suit was reasonable is the three-year statute of limitations in § 507(b).
Calhoun’s period of delay ranges anywhere from 23 years, from the time that “Emmanuel” was written in 1976, to 13 years, from the time it was licensed to churches around the world in 1984. During this time Calhoun took no legal action to stop or to seek redress for the putative infringement. By any calculation, this delay is more than enough. See Freedom Savings and Loan Ass’n. v. Way, 757 F.2d 1176, 1186 fn. 8 (11th Cir.1985) (five years delay in filing trademark infringement suit considered sufficient); Studiengesellschaft Kohle mbH v. Eastman Kodak Co., 616 F.2d 1315, 1326 (5th Cir.1980) (delay presumed unreasonable when exceeded the statutory six-year period). Applying the three-year benchmark, it is clear that Calhoun’s delay of over a decade plainly constitutes a significant delay.
2. Inexcusable Delay
Next, the cause of the delay should be examined to determine whether Calhoun’s *1237 lengthy delay in filing suit was excusable. Kason, 120 F.3d at 1204. Some examples of permissible delay, frequently viewed in the context .of equitable tolling, among other circuits include: (1) the need for the exhaustion of remedies through the administrative process, Couveau v. American Airlines, Inc., 218 F.3d 1078, 1083-84 (9th Cir.2000); (2) additional time to determine whether the scope of the proposed infringement will justify the cost of litigation, Lotus Dev. Corp. v. Borland Int’l, Inc., 831 F.Supp. 202, 219 (D.Mass.1993), rev’d on other grounds, 49 F.3d 807 (1st Cir.1995); and (3) the need for additional time to evaluate the extent of the infringement, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1033 (Fed.Cir.1992).
To explain his delay in filing suit, Calhoun claims that he was unaware that “Emmanuel” existed. McGee/Asignees contend that the delay was inexcusable because Calhoun should have known about his alleged claim of infringement well before 1997, the date he claims to have “discovered” the putatively infringing and strikingly similar composition, due to the popularity of “Emmanuel” throughout the past two decades. “Emmanuel” has appeared in a number of major Christian denominational hymnals and has been translated into dozens of foreign languages. It has consistently been ranked in the top twenty requested Christian songs. Calhoun worked as both a choir director and an organist for almost ten years prior to filing suit, and regularly played songs from hymnals that contained the chorus “Emmanuel.” Furthermore, Calhoun, himself, listed over 21 publications that included “Emmanuel” in addition to the list of 20 publications submitted by McGee/Assignees during discovery. R1^L3; R2-47, 48.
The district court found “it difficult to believe that [Calhoun] did not have notice of the allegedly infringing song prior to 1997.... [H]ad [Calhoun] exercised an iota of diligence, he would have learned of the possible infringement earlier.” R3-108 at 8. I agree. Given the evidence in this record no reasonable juror could have concluded that Calhoun exercised any diligence in protecting his copyright. With copyright rights come concomitant responsibilities, including the responsibility to assert those rights in a timely manner after exercise of diligence. Moreover, in the district court Calhoun argued that the two compositions were strikingly similar in melody (as opposed to lyrics), thus compelling a recognition of the putative infringement. Given the length of time that had passed, the wide dissemination of “Emmanuel,” and his substantial experience and involvement with church music, Calhoun should have known about “Emmanuel,” and therefore, the delay in filing suit was inexcusable.
3. Prejudice
The final factor informing the decision to bar by unreasonable delay is whether McGee/Assigns have been prejudiced by Calhoun’s delay. In similar contexts courts have recognized a variety of factors that constitute prejudice: (1) important witnesses have died; (2) the memories of witnesses have been dulled; (3) relevant records have been destroyed or are missing; and (4) the loss of monetary investments which likely would have been prevented by earlier suit. Eastman Kodak Co., 616 F.2d at 1326. See Jackson v. Axton, 25 F.3d 884 (9th Cir.1994); Byron v. Chevrolet Motor Div. of General Motors Corp. 1996 WL 465130 (S.D.N.Y.1995). Cf. Hoste v. Radio Corporation of America, 654 F.2d 11 (6th Cir.1981). Calhoun admits that the song “Emmanuel” may not have become as widespread as it is today had he objected sooner. As McGee/Assigns point out, since 1984, C.A. Music has *1238 licensed “Emmanuel” to hundreds of licensees, 28 of whom make up the assigns in this case. McGee’s assigns have invested a substantial amount of time and money in the licensing of “Emmanuel” by relying on the validity of its copyright. Accordingly, McGee/Assigns are able to demonstrate prejudice by showing that they suffered consequences that they would not have, had Calhoun acted promptly.
While the foregoing analysis is not required for a resolution of this dispute, perhaps my rumination may be useful to those confronted with this intriguing copyright scenario in the future.

. Heretofore, courts have frequently considered delay in initiating an action where, as is typical, preliminary injunctive relief has been requested. Essentially, where unreasonable delay has occurred, courts have concluded that such delay is suggestive of a lack of irreparable harm. See, e.g., Richard Feiner and Co., Inc. v. Turner Entertainment Co., MGM/UA, 98 F.3d 33 (2nd Cir.1996); Tom Doherty Associates, Inc. v. Saban Entertainment 60 F.3d 27 (2d Cir.1995); Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259 (6th Cir.1988); Markowitz Jewelry Co., Inc. v. Chapal/Zenray, Inc., 988 F.Supp. 404 (S.D.N.Y.1997); Fritz v. Arthur D. Little, Inc., 944 F.Supp. 95, 98 (D.Mass.1996).

. See Stone v. Williams, 970 F.2d 1043 (2d Cir. 1992); Taylor v. Meirick, 712 F.2d 1112 (7th Cir.1983); Prather v. Neva Paperbacks, Inc., 446 F.2d 338 (5th Cir.1971); 3 Nimmer § 12.05[B],

. I stress that here I am not applying a laches analysis to an infringement action. Rather 1 analyze this unique case as essentially a declaratory judgment action, focusing on a musical composition that the first composer in time claims to be identical to the second composer's score when a bona fide claim of independent creation is asserted. The cases, heretofore existing, closest to this unusual case involve claims of putative co-aufhorship where one of the co-authors seeks a declaration of sole ownership. Thus my approach is closest to that taken by the Second Circuit in Merchant v. Levy, 92 F.3d 51, 57 n. 8 (2d Cir.1996) (a co-authorship case where laches was not addressed, but a-delay bar was imposed). Moreover, this avoids the need to embrace one side or the other in applying the laches defense.
The circuits are split on whether it is appropriate to consider a laches defense where an infringement action is brought within the statutory three-year period of limitations. See Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir.1992) (where uncertainty surrounded the relative's status of the author’s family, the statute of limitations was not applied to defeat the copyright co-ownership claim of an author's relative accruing more than three years before the lawsuit); Lyons Partnership v. Morris Costumes, Inc., 243 F.3d 789, 797 (4th Cir.2001) (“in connection with copyright claims, separation of powers principles dictate that an equitable timeliness rule adopted by courts cannot bar claims that are brought within the legislatively prescribed statute of limitations”); Danjaq LLC v. Sony Corporation, 263 F.3d 942, 954 (9th Cir.2001) ("If a defendant can show harm from the delay, the court may, in extraordinary circumstances, defeat the claim based on laches, though the claim is within the analogous limitations period”) (citation omitted). Perhaps the Court's opinion in Nat’l Railroad Passenger Corp. v. Morgan,-U.S.-, 122 S.Ct. 2061, 2077, 153 L.Ed.2d 106 (2002) will clarify that issue.

. A work is "original,” and therefore accorded copyright protection, if it is independently created by the author and possesses some minimal degree of creativity. 17 U.S.C. § 101 et seq.

. See, e.g., Merchant, 92 F.3d at 56 ("[w]e hold that plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and remedies that would flow from such a declaration.”); Danjaq LLC, 263 F.3d at 954 (upholding a district court’s application of laches to prevent a plaintiff from pursuing copyright infringement claims when plaintiff filed suit "at least twenty-one years — and more likely, thirty-six years” after having knowledge of the potential claims); Margo v. Weiss, 213 F.3d 55, 60-61 (2nd Cir.2000); Zuill v. Shanahan, 80 F.3d 1366, 1371 (9th Cir.1996) (barring "a declaratory judgment of co-ownership and the relief ancillary to such a claim”); New Era Publications Int’l v. Henry Holt & Co., 873 F.2d 576, 584-85 (2d Cir.1989) (laches barred plaintiff from enjoining publication of author's biography when plaintiff had delayed "unreasonabl[y] and inexcusabl[y]" in filing suit.); Fort Knox Music, Inc. v. Baptiste, 47 F. Supp 2d 481, 483-84 (S.D.N.Y.1999); 3 Nim-mer § 12.05[C], n. 63 ("If A cannot be heard to claim belatedly that he co-authored a work with B 20 years ago, which would result in A owning 50% of the copyright, then all the more so C must be barred from belatedly claiming that she solely authored a work on which D has been claiming authorship credit for 20 years, which would result in C owning 100% of the copyright”).